JOHN PETER EISENLORD, Appellant, *v.* DAVID H. CLUM et al., Respondents.

In an action of ejectment, wherein plaintiff claimed as the only son and heir at law of E., who died seized of the premises, the question at issue was as to whether M., the mother of plaintiff, was, previous to his birth, married to E. M. was called as a witness for plaintiff to prove the marriage, but her testimony was excluded as incompetent under the Code of Civil Procedure (§ 829). *Held,* error; that M. was not a person from, through or under whom plaintiff derived any title or interest, nor was she "interested in the event of the action" within the meaning of the Code; that a judgment in favor of plaintiff would not be competent evidence, either by way of admission or on the ground of estoppel, in favor of M. in an action brought by her to recover dower in the premises.

*Miller* v. *Montgomery* (78 N. Y. 282), distinguished.

A judgment in favor of the father of M. in an action brought by him against E. for the alleged seduction of M., was offered in evidence by defendants, and was received under objection and exception. *Held,* error.

Plaintiff offered to prove declarations of E. made long subsequent to the time when the alleged marriage ceremony took place to the effect that he was married to M.; the evidence was excluded. There was no proof that E. and M. ever lived and cohabited together as man and wife, or that he ever had anything to do with or even met plaintiff. *Held,* that while

the evidence was not competent as part of the *res gestæ* to characterize the acts of the parties, yet as the case involved simply a question of pedigree, and as upon that question hearsay evidence, *i. e.*, evidence of declarations made by a person who, from his situation, was likely to know the facts, is admissible when the person making them is dead, the evidence was competent and its exclusion error.

The term pedigree embraces not only descent and relationship, but birth, marriage and death, and the times when these events happened, and the rule permits hearsay evidence of deceased members of the family in any case involving pedigree.

*Westfield* v. *Warren* (8 N. J. L. 249); *Haines* v. *Guthrie* (L. R. [13 Q. B. Div.] 818); *In re Taylor* (9 Paige, 611), distinguished.

*It seems*, however, the evidence although admissible is liable, under the facts of this case, to grave suspicion, and is to be looked upon with great distrust.

(Argued April 23, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 7, 1890, which affirmed a judgment in favor of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. J. Abbott* for appellant. The fact of the marriage having been established, the presumption of the legitimacy of this plaintiff, as the son of Dr. Eisenlord, is the most violent presumption known to the law ; and such presumption can be overturned only by clear proof of non-access of the husband and wife for a length of time before the birth of the child, beyond which it would be impossible for the husband to have been the father of the child. (Abb. Tr. Ev. 88, 89 ; Gerard on Real Estate [2d ed.] 386 ; *Cross* v. *Cross*, 3 Paige, 139 ; *Montgomery* v. *Montgomery*, 3 Barb. Ch. 132 ; *Canjolle* v. *Ferrie*, 23 N. Y. 90 ; 1 Barb. Ch. 375, 377.) The mother of the plaintiff was a competent witness, for all purposes, under section 828 of the Code. Her testimony could not be excluded unless brought within the exceptions contained in said section 829. She had no such interest such as contemplated by that section. (*Jackson* v. *Bard*, 4 Johns. 230 ; *Jackson* v. *Van*

*Dusen,* 5 id. 144, 157 ; *Van Rensselaer* v. *Kearny,* 11 How. [U. S.] 297, 326 ; *Jackson* v. *Brooks,* 8 Wend. 431 ; *Hobart* v. *Hobart,* 62 N. Y. 80.) The court erred upon the trial in excluding the testimony of witnesses, whose testimony was offered by the plaintiff, as to admissions and declarations of Dr. Eisenlord in his life-time, from time to time, to the several witnesses, emphatically going to prove that he had been married in his life-time to Margaret Lipe, the plaintiff's mother, and that the plaintiff was his son and heir, being the legitimate offspring of the marriage. (*Blackburn* v. *Crawford,* 3 Wall. 175 ; *Gaines* v. *New Orleans,* 6 id. 642 ; Abb. Tr. Ev. 89, 90, 91, §§ 32, 33, 34.) The record of a judgment in the Supreme Court in an action between John A. Lipe, plaintiff, against Peter O. Eisenlord, defendant, brought by Lipe against the doctor for the seduction of said Lipe's daughter, Margaret Lipe, mother of the plaintiff in this action, was improperly received. (6 Wait's Act. & Def. 770, 771, 784, 785, 787, 788, 802, §§ 1, 2, 3, 4, 5, 25, 26, 27, 28.)

*George W. Smith* and *Worrell & Spraker* for respondents. There is no sufficient evidence of a marriage. (37 N. Y. 59 ; 98 id. 351 ; 1 Greenl. on Ev. 525 ; 49 Hun, 340.) The testimony as to the marital relation by comparative strangers was properly rejected. (*In re Taylor,* 9 Paige, 617 ; 57 Barb. 235 ; Bishop on Mar. & Div. §§ 438, 439, 541.) The offer of the plaintiff to give the testimony of Mrs. Austin as to personal transactions with the deceased was properly rejected. (Code Civ. Pro. § 829 ; 49 Hun, 340 ; *Richardson* v. *Warner,* 13 id. 13 ; *Lyon* v. *Snyder,* 61 Barb. 172 ; *In re Wilson,* 103 N. Y. 374.) Declarations, such as those urged by the appellant, have not been regarded as admissible where there has been no marriage celebrated, no cohabitation, no proof of any intercourse of the parties. (*Jacques* v. *Pub. Admr.,* 1 Bradf. 508 ; *Chamberlain* v. *Chamberlain,* 71 N. Y. 426 ; *Badger* v. *Badger,* 88 id. 555, 556 ; *Harbeck* v. *Harbeck,* 102 id. 714 ; *Com.* v. *Stump,* 53 Penn. St. 132 ; *Smith* v. *Smith,* 52 N. J. L. 207 ; *Sharon* v. *Sharon,* 79 Cal. 663.)

Peckham, J.   The plaintiff brings this action of ejectment, as the son and sole heir at law of one Peter O. Eisenlord, who died in Montgomery county on the 30th day of June, 1885, seized in fee simple and possessed of the premises described in the complaint.

The defendants other than Clum are respectively the brothers, sisters or neices of the deceased Eisenlord, and claim that they are his sole heirs at law, and the defendant Clum is in possession of the premises described in the complaint and claims under the other defendants as tenant.

The plaintiff is the son of one Margaret Lipe, and the question in issue depends upon whether she was married to the deceased Eisenlord prior to this son's birth.   The plaintiff endeavored to prove an actual marriage between the deceased and his mother prior to his birth on the 21st of October, 1857, and for that purpose called, among others, his mother, then married to one Austin.   The plaintiff offered to prove by her various conversations between the witness and the deceased upon the subject of their getting married, and also offered to prove by her the performance of the marriage ceremony between them by a justice of the peace in Montgomery county, at a time anterior to the plaintiff's birth.

All the evidence was objected to by defendants' counsel and was excluded by the court on the ground that the witness was interested and came within the provisions of section 829 of the Code, because if she established the fact that she was married to the deceased, she would then be entitled to dower in this real estate.

The witness was not a party to the action, and hence could not be excluded as having any interest on that ground.   Nor was she a person from through or under whom the plaintiff derived any title or interest by assignment or otherwise.   His title or interest, if any, came through Eisenlord and that, of course, depended upon the question whether the plaintiff was his legitimate son.

The only other ground of exclusion contemplated by the statute refers to a person " interested in the event " of the action.

Prior to the adoption of the Code the law excluded interested witnesses from testifying. What amounted to such an interest as would exclude a witness was a question which was frequently presented, and in almost every conceivable phase, and the courts had finally settled down to a general rule on the subject, which had long prevailed before the legislature altered it.

At common law, as the rule became developed by successive decisions, the interested witness was excluded only when he had what was termed a *legal interest in the event of the action.* A direct and certain interest in the event of the cause or an interest *in the record* for the purpose of evidence, became necessary in order to exclude. (Starkie on Ev. marg. pgng. 23, 24, 9th ed. 1849.)

The inclination of the courts was towards a holding that the fact of interest should go to the credit rather than to the competency of the witness, and hence they said that the party alleging incompetency must show it beyond doubt. The English legislature interfered with the rule as to *the record*, and provided that it should not be evidence in another action for or against the witness who testified. (3 and 4 Will. IV. ch. 42, § 26.) Then under the suggestion of Lord Denman, another act was passed limiting very greatly the cases in which a person should be excluded by reason of interest. (6 and 7 Vic. ch. 85.)

In this state the question arose at an early date, and in one of the pioneer cases, *Van Nuys* v. *Terhune* (3 Johns. Cas. 82), the rule as above stated was declared as the law. It was therein explained that a witness was not interested in the event of the cause unless he would gain or lose by the event, and he was not interested by *the record* unless the verdict could be given in evidence for or against him in some other proceeding. In a note to this case it is stated that the rule was formerly that an interest in the question put to the witness excluded him, but it was admitted that such rule had been explained away and limited, so that the one announced in the case was the true rule. This case was decided in 1802.

In *Jackson ex dem.* v. *Bard* (4 Johns. 230), it was held that the widow of one Dickenson, who was the mediate grantor

under whom the defendant claimed the land in question, was a competent witness, although it was argued she might claim dower in case the deed had not been executed. The Supreme Court held the decision correct, and said she was not an interested witness, because the verdict in the cause could never be given in evidence in an action of dower brought by her.

Then in *Jackson ex dem.* v. *Van Dusen* (5 Johns. 144), which was an action of ejectment, it was distinctly held that the widow of a person deceased was a competent witness in an action brought by the heir to recover the possession of lands claimed under her husband, though she would be entitled to dower in such lands. Van Ness, J., delivered the opinion of the court, and said the witness had no other interest in the case than that which grew out of her right of dower in the premises, and as to that the verdict in the cause would be no evidence in a suit to be brought by her for the recovery of her dower.

In *Jackson ex dem.* v. *Nelson* (6 Cow. 248), it was held that in an action of ejectment against a devisee, a co-devisee and tenant in common with the defendant, not in actual possession, might be a witness for defendant because the effect of a recovery by the plaintiff would not be to turn him out of any possession, nor could the verdict be evidence for or against him in any other suit.

Again in *Jackson ex dem.* v. *Brooks* (8 Wend. 426, 431), an action of ejectment, it was held that a tenant by the curtesy was a competent witness for the plaintiff, who was the heir at law. The court said the witness could not use the verdict if the plaintiff recovered, as evidence in his favor in any suit he might bring to enforce his title as tenant by the curtesy, and hence he had but an interest    he question and not in the event of the suit. (See also Peake on Ev. Norriss' notes, 209, Pt. 1, ch. 3, § 3; 1 Greenl. on Ev. § 386, *et seq.*) The interest must be certain, direct, not contingent or remote, or a mere possible benefit.

Under the rule of the common law on the subject of interest it is plain that the mother in this case would have been a com-

petent witness. She had no interest in the event of the suit, as that expression has been defined by the courts, and the judgment would not have been any evidence for or against her in any action she might bring. I think the expression "interest in the event," as used in our statute, was never intended to enlarge the class to be excluded under it beyond that which the common law excluded in using the same language.

All legislation on the subject has been in favor of greater liberality in the rules relating to the competency of witnesses. Upon referring to the cases which have been decided under the section of the Code already referred to, we find that the rule defining what is an interest in the event is laid down in about the same terms as those used by the common law. (*Hobart* v. *Hobart*, 62 N. Y. 80; *Nearpass* v. *Gilman*, 104 id. 506; *Wallace* v. *Straus*, 113 id. 238; *Connelly* v. *O'Connor*, 117 id. 91.)

But the learned General Term, upon the appeal in this case, has held the exclusion was proper on the ground that the judgment would furnish the witness with important evidence to establish her claim to dower in the premises described in the complaint. The cases I have cited show conclusively that such a judgment would not have been admissible in evidence at common law in any such action, either for or against the witness, and in this respect the Code has not changed the rule.

The case of *Miller* v. *Montgomery* (78 N. Y. 282), is cited to show that the record would be legal evidence for or against her. A surety upon the bond of a non-resident executor was there held to be interested in the event of the accounting of his principal. This was so held because the surety is bound by the decree of the surrogate made upon a regular accounting, and such decree would be evidence against the surety in a suit upon the bond. Within all rules such a witness is interested and is incompetent to testify to a personal transaction with the deceased.

The General Term also thought the judgment would be evidence as a declaration or admission by the plaintiff of the facts or some of them, which the witness would have to prove in

her action against him for dower. Any declaration or admission made by the plaintiff as to any fact material for the witness to prove in her action, is undoubtedly admissible as an admission. If found in a pleading and it be shown that it was placed there with the knowledge and sanction of the plaintiff herein, such pleading would be admissible for the purpose of proving such admission. (*Cook* v. *Barr*, 44 N. Y. 156.) In order, however, to prove such admission, it is not necessary or proper to put in evidence the judgment in the action, for it is not the judgment which furnishes the proof, but the admission contained in the pleadings, and the judgment is not in that case the least evidence in favor of the witness in any action she might bring. The admission would exist without the judgment and regardless of it.

That the witness has an interest in the question is very plain, but I am aware of no principle that would permit the introduction of this judgment as any proof for or against the witness in any other action. I see no foundation for any estoppel as against the plaintiff herein in an action brought by the witness to recover her dower. If, as I say, he has made admissions they may be proved, but to say that he is estopped in the action for dower from denying any fact upon which the right of the plaintiff in such action depends, because in another action between himself and a third party it was necessary for him to prove the same fact, would be a great extension of the doctrine of estoppel. If in the course of such first trial the plaintiff had admitted by his own testimony any fact material in the dower action, it would be an admission which could be taken advantage of by proving that it was made, but if the fact had been proved by some third party instead of by the plaintiff, it is not in that event an admission or declaration of the plaintiff therein, which renders a judgment in that action proof against him in any future controversy with a third party.

The cases cited from 1 Greenl. on Ev. (§ 527a), are those where it was claimed the party had made an admission in a declaration or other pleading, or had suffered default, and it

was held such express admission, or such constructive admission by suffering a default, was competent evidence against him. We do not doubt the correctness of this rule. It is not the judgment which is to form the evidence. It is the admission contained in the pleading or by the suffering of the default.

Our conclusion is that the mother of the plaintiff was a competent witness to prove any or all facts of which she was cognizant and which were material and which were not inadmissible upon some ground other than the alleged interest of the witness in the event of the action.

*Second.* Another question arises upon the reception in evidence against the objection of the plaintiff, of the judgment in the action of *John A. Lipe* v. *Peter O. Eisenlord.* It was an action brought by Mr. Lipe (who was the father of Margaret Lipe, the mother of the plaintiff in this action), against the defendant on account of his alleged seduction of the plaintiff's daughter Margaret, and in which action the plaintiff recovered a verdict, upon which judgment was entered in his favor.

I see no ground on which to permit its introduction in this action. The plaintiff here was no party to it, nor was his mother, Margaret Lipe. The judgment established no. *status* of the plaintiff's mother. As a judgment it simply established the fact which was conclusive on all parties and privies thereto, that in 1856, the defendant had seduced the plaintiff's daughter, Margaret Lipe. Neither the plaintiff in this action nor his mother was a party or privy to it. In that class of judgments, which touch the subject of marriage or divorce, and either establish a marriage or decree a divorce between the parties, it has been held that under certain circumstances and within proper limitations as to jurisdiction, etc., such judgments are binding and of universal obligation. It is upon the same principle that the decree of a court *in rem* is conclusive upon the title to the *res* adjudicated upon. (1 Green. on Ev. §§ 543, 544 and notes.)

But this is no such judgment. It adjudges no status and is conclusive of the facts therein adjudged, simply between the parties and privies thereto, and the plaintiff occupies neither

position.   If the witness had been sworn and had testified to facts upon this trial, which it was claimed were inconsistent with what she swore to on the trial of the seduction case, upon her attention being called thereto and a proper foundation laid, such contradictory and inconsistent declarations or evidence, if material, could have been proved with a view to impeach her evidence upon this trial.

 We think the judgment spoken of was not admissible in evidence against the plaintiff.

A third question arises upon the exclusion of declarations said to have been made by Eisenlord at times long subsequent to the time when this alleged marriage ceremony took place. One witness was called and the plaintiff offered to prove by him that Eisenlord had said to him, in 1863 or 1864, that he was married and had a wife, and that it was Margaret Lipe. The plaintiff offered to prove by another witness that Eisenlord had said he was married and had an heir, a son, the one witness had teased him about, the plaintiff herein.   This was in 1867 or 1868.   Eisenlord died in 1885.   The evidence was objected to as incompetent and as not characterizing any act or thing which could render it admissible.   The objection was sustained and the plaintiff excepted.

The fact is undisputed that the deceased Eisenlord and Margaret Lipe never lived together or cohabited as man and wife. No declarations of his could, therefore, characterize or explain the nature of a cohabitation which confessedly never existed. It is equally undisputed that Eisenlord never had anything to do with this alleged son.   They never lived together, and if they ever met, there is no proof of such fact aside from the possible inference arising from some of the alleged declarations, and they only went to the extent of an inference that Eisenlord had seen the plaintiff.   These declarations, therefore, did not in any manner characterize or explain the footing upon which the plaintiff and Eisenlord had ever lived together, or even met.

Under such circumstances, the question arises as to the admissibility of the proposed evidence for the purpose of proving, or as corroborative proof of a marriage in an action

of this nature. They might be admissible upon the trial of an action to which the person making them was a party.

It has been held in England and in some of the states of this union that evidence of declarations as to a former marriage was competent in the trial of an indictment for bigamy against the party making them. (1 Whart. on Ev. § 86 & note; *Miles* v. *U. S.*, 103 U. S. 304.)

But in this state it has been held that such evidence was not sufficient in a prosecution for bigamy, to establish a marriage, even against the party making the admissions. (*People* v. *Humphrey*, 7 Johns. 314; *Gahagan* v. *People*, 1 Park. Cr. 378.) The court in the latter case held them admissible to corroborate the proof of the actual marriage.

In cases where a cohabitation between a man and woman was proved at the time when the declarations of the parties were made, they have been admitted in evidence, even in the life-time of the parties making them, upon the principle that they were a part of the *res gestæ*, accompanying, characterizing and explaining the nature of that cohabitation as being matrimonial, rather than meretricious. They were admitted as competent proof, corroborative of the claim of a marriage between the parties so cohabiting. It was stated that proof of cohabitation, conduct, reputation, reception in family and in society, holding each other out as husband and wife, all tended to prove a marriage, and that in a perfect case they all combined, the lesser facts attending upon and explaining the material and important fact of cohabitation. These principles are illustrated in the authorities herein cited. (1 Bish. on M. & D. § 439; 1 Ph. Ev., Cow., Hill & Edwds. Notes, pg. 252, note 91; *Read* v. *Passer*, 1 Esp. 213; *Leader* v. *Barry*, Id. 353; Matthews on Presump. Ev. 283; *Fenton* v. *Reed*, 4 Johns. 52; *In re Taylor*, 9 Paige, 611; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Chamberlain* v. *Chamberlain*, 71 id. 423; *Badger* v. *Badger*, 88 id. 546.)

All these cases do not speak of the principle upon which the declarations were admitted, but it plainly appears that there was cohabitation, and the declarations, reputation, hold-

ing themselves out as married persons, etc., all came in as adjuncts to strengthen the inference and to corroborate the presumption of marriage resulting from such cohabitation, and as explanatory thereof, and, therefore, as part of the *res gestœ*.

How far the principle of *res gestœ* extends was somewhat discussed in *Badger* v. *Badger* (*supra*), by FINCH, J., but the point here was not decided. I do not see that these declarations in the face of evidence that there never was any cohabitation between the parties, can be claimed to have been part of the *res gestœ*, even under the most extended definition of that term, and some other ground must be sought for their admission, if they be competent at all.

It seems to me that they are competent as hearsay evidence in a case of pedigree. Such a case is a well known and recognized exception to the general rule excluding hearsay evidence. This case involves without doubt a question of pedigree simply. It is what is termed in the books a purely genealogical controversy. Peter O. Eisenlord is upon the plaintiff's claim the common ancester of all the parties, while the defendants only deny the plaintiff's relationship to him. The sole question involved is as to this relationship of the plaintiff, and that depends upon the fact of a marriage having taken place between Eisenlord and the plaintiff's mother before his birth. The exception regarding the admission of hearsay evidence in case of pedigree is not confined to ancient facts, but extends also to matters of pedigree which have recently transpired; and the hearsay as to deceased witnesses is admitted as to facts which have occurred in the presence of living witnesses. (1 Ph. on Ev. Cow, H. & Edws. Notes, Pg. 248; *Vowles* v. *Young*, 13 Ves. 140.) Matters of pedigree consist of descent and relationship, evidence of declarations of particular facts such as births, marriages and deaths. (Id. 251.)

In cases of pedigree hearsay evidence of declarations of persons who from their situation were likely to know, is admissible when the person making the declarations is dead. (*Jackson ex dem. Ross* v. *Cooley*, 8 Johns. 128.)

It is not the question whether such evidence is sufficient to prove the marriage, but only whether it is competent. In many cases it will be readily seen such evidence may under the circumstances be the only evidence which can be obtained, and there might be no evidence of cohabitation. In those cases the declarations might be less open to criticism and entitled to much greater credence than where the facts were recent and other evidence readily attainable, if the truth were in that direction. The weight to be given this kind of evidence depends upon the facts surrounding each particular case. It is plain, however, that in cases of pedigree the declarations to be admissible need not be a part of the *res gestæ*, for if they were, they would be admissible on that ground irrespective of any question of their admissibility as in a case of pedigree. The exception to the general rule in the latter case takes a wide range. Traditional declarations become the best evidence sometimes, when those best acquainted with the fact are dead. When derived from those who are most likely to know the truth and are under no bias to misrepresent the fact, such evidence affords a reasonable presumption of the truth. (Starkie on Ev. Pg. 47, 9th Am. ed. 1879.)

Upon questions of pedigree, *i. e.*, in a controversy merely genealogical, hearsay evidence is allowed as to the time of birth of a certain party, as to a marriage, death, legitimacy or the reverse, consanguinity generally, and particular degrees thereof, and of affinity. (Per KNIGHT-BRUCE, V.-Chan., in *Shields* v. *Boucher*, 1 DeG. & Sm. 40–52.)

The term pedigree, says Greenleaf, embraces not only descent and relationship, but also the facts of birth, marriage and death, and the times when these events happened, and the rule permits hearsay evidence of the declarations of deceased members of the family upon these points in any case involving pedigree. (1 Greenl. on Ev. §§ 103, 104.) The declarations to be admissible need not be upon the knowledge of the declarant. If this was so the main object of permitting hearsay evidence would be frustrated, as it seldom happens that the declarations of deceased relations embrace matters within

their own personal knowledge. Thus evidence that a deceased member of the family said that he heard from others of his family the facts which he states is admissible. (1 Whar. on Ev. § 205; *Doe ex dem. Banning* v. *Griffin,* 15 East, 293; *Doe ex dem. Futter* v. *Randall,* 2 Moore & Payne, 20.) The evidence is, of course, not rendered less admissible where the declarant knows the fact which he declares. For the purpose of proving a marriage in cases of pedigree, where the object is to trace relationship, the declarations of deceased members of the family are competent. (1 Whar. on Ev. § 212.)

It has been stated that declarations in regard to particular facts are not competent. This is true in cases where proof of a custom, right of way, of common and the like is offered. But in a case of pedigree it is always a particular fact that is to be proved, and in relation to which the declarations of the deceased person are offered, and in such cases the particular facts stated, such as birth (place or time, where material), marriage and death, are competent. (1 Ph. Ev., C., H. & Edwds. Notes, M. Pg. 251; Whart. on Ev. § 209.)

In respect to such proof of particular facts it has been said that "A birth, however, from a single woman, a birth from a married woman, a death, a marriage, is a particular fact or a single act which, of course, is provable by hearsay (hearsay from a proper quarter) on a question of pedigree." (Per V.-Chan. KNIGHT-BRUCE in *Shields* v. *Boucher, supra.*)

The only case looking to the contrary that I have found is *Westfield* v. *Warren* (8 N. J. L. 249), where EWING, Ch. J., said that where marriage was to be shown as a substantive, independent fact, it was within none of the exceptions to the general rule, and that hearsay evidence could not be received. The case was one regarding the settlement of a pauper, and might well have been placed upon the ground that it was not a case of pedigree at all. In *Rex* v. *Erith* (8 East, 539), Chief Justice ELLENBOROUGH held, in a case of a settlement of a pauper, that it was not a case of pedigree, but simply a question as to what place an undisputed birth derived from acknowledged parents had taken place in.

I think it entirely clear that from the nature of the case, as well as upon authority, a case of pedigree forms an exception to the general rule as to proof of a particular fact by hearsay, reputation or tradition.   As to what is a case of pedigree, an examination of the question shows that a case is not necessarily one of that kind, because it may involve questions of birth, parentage, age or relationship.   Where these questions are merely incidental and the judgment will simply establish a debt, or a person's liability on a contract, or his proper settlement as a pauper and things of that nature, the case is not one of pedigree, although questions of marriage, legitimacy, death or birth are incidentally inquired of.   (*Whittuck* v. *Waters*, 4 C. & P. 375.)

Thus, in *Haines* v. *Guthrie* (L. R. [13 Q. B. D.] 818), it was held both in the Queen's Bench Division and in the Court of Appeal that declarations of a deceased father were not admissible in ·evidence to prove the age of his son who had been sued for the price of a horse sold him, and who had set up the defense of infancy.   They would have been admissible, the court stated, if the case had been one of pedigree. BRETT, M. R., in the course of his opinion in the Court of Appeal, shows the absence of those facts which make up a case of pedigree, for he says, " What the family of the defendant is is immaterial, whose son he is is immaterial, whether he is a legitimate or an illegitimate son is immaterial, and whether he is an elder or a younger son is immaterial.   No question of family is raised in the case."   It simply involved the point of the age of a defendant for the purpose of thereby determining his liability upon a contract which he had made, and upon which, if of age, he was liable.   The judgment would in such case establish no fact in any contest the defendant might have in regard to property depending upon his being a member of his father's family, or his age at any particular time.   It was not at all a genealogical controversy, but a mere collateral issue, and hence the rule in pedigree cases did not apply.   In the case at bar, however, the case is solely one of pedigree, and the evidence must be judged of with regard to this fact.

The case of *In re Taylor* (9 Pai. 611), where the chancellor held that the declarations of one of the parties made after the cohabitation had ceased could not be admitted in evidence, was not a pedigree case, but only involved the appointment of a committee for the father, who was insane, and such declarations were held inadmissible as not being a part of the *res gestæ*.

A careful examination of the question has led me to the conclusion that the evidence of Flanders and Saltsman regarding Eisenlord's declarations should have been received as in a case of pedigree. Other evidence of course may be offered that may be definite enough to be competent, though most of what was offered other than that to which I have alluded was altogether too vague to be admissible. It identified no one, and really amounted to nothing.

Although admissible, the evidence is liable to grave suspicion. Indeed we are bound to say that this whole case presents itself as full of suspicion. The silence of the woman during all these years as to the marriage, silence which was continued until the death of her alleged husband, is in and of itself a suspicious fact. Admissions of a marriage are, under such circumstances, most unsatisfactory and open to grave doubt. If such declarations were in truth ever made, there may have been motives which it is impossible to fathom, and which may at the same time have operated upon Eisenlord and induced him to make an admission of this kind when it was wholly untrue. Where the facts are of comparatively recent occurrence, and the alleged declarations of the deceased are at war with his known actions during his life, and where there was no cohabitation or recognition of the party as wife or husband, it may be averred that the evidence is to be looked upon with very great distrust. Still within the authorities the evidence is competent. Under our rulings there may be evidence enough in the case to require its submission to a jury.

The judgment must be reversed and a new trial granted, costs to abide event.

All concur, Andrews and Finch, JJ., on first two grounds.

Judgment reversed.