JAMES CRAMPTON, Appellant, *v.* THEODORE A. FOSTER and NELLIE
   PERRY CRAMPTON, as Executors, etc., of ALVA C. CRAMPTON,
   Deceased, Respondents.

*Evidence — a maker of a note called by the payee and indorser to testify in relation
to a personal transaction with the deceased indorsee.*

A father, and a son since deceased, delivered to one Babcock their joint and sev-
   eral bond and a mortgage, executed by the father for $1,000, in consideration of
   which Babcock gave to the son $1,000, which sum was paid to one Arthur J.
   Crampton, who gave to the father his promissory note for that amount, bear-
   ing the same date as the bond and mortgage, payable to the father's order,
   which was indorsed by the father, and was in the possession of the son at the
   time of the latter's death.
In an action brought by the father to recover a legacy left to him by his son, the
   son's executors set up as a counterclaim the plaintiff's alleged liability as an
   indorser on the note made by Arthur J. Crampton.
Upon the trial the plaintiff called as a witness Arthur J. Crampton, the maker of
   the note, and endeavored to establish by his testimony that the note was
   indorsed and delivered upon the understanding that the indorser was not to be
   liable as upon a contract to pay the deceased $1,000; that the note was deliv-
   ered for safe-keeping only, and that there was no consideration for the contract
   of indorsement.
This evidence was objected to as inadmissible under section 829 of the Code of
   Civil Procedure, because it related to a personal transaction with the deceased,
   on the ground that the indorser was a surety for the maker, and that the latter
   was, consequently, precluded from testifying in favor of the indorser in regard
   to a personal transaction with the deceased.
*Held,* that the admissibility of the evidence was to be determined solely upon the
   independent contract of indorsement;
That the principle applicable to the case of a surety was not applicable to an
   indorsement by the payee of a note, as a judgment against such indorser would
   not be evidence in an action brought by the indorser against the maker, and
   that the maker could, therefore, neither gain nor lose by the direct legal opera-
   tion of a judgment in this action;
That in the case at bar the maker of the note was not interested in the event of
   the suit, nor was he examined as a witness on his own behalf or interest, his
   liability to the person who might be the legal owner or holder of the note being
   undisputed.

APPEAL by the plaintiff, James Crampton, from a judgment of
the Supreme Court in favor of the defendants, entered in the office
of the clerk of the county of Onondaga on the 23d day of October,
1897, upon the verdict of a jury rendered by direction of the court,

and also from an order entered in said clerk's office on the 28th day of October, 1897, denying the plaintiff's motion for a new trial made upon the minutes.

This action was brought to recover a legacy of $1,000 bequeathed by the will of Alva C. Crampton to the plaintiff.

The defendants, in their answer, set up as a counterclaim the alleged liability of the plaintiff as an indorser of a promissory note for $1,000, made by one Arthur J. Crampton, payable to the order of the plaintiff, and indorsed and delivered by him to the testator. The plaintiff replied and alleged that there was no consideration for the indorsement, and that the note was delivered to the testator for safe-keeping.

It appears from the evidence that the plaintiff resided in Cicero upon a small parcel of land, consisting of about two acres, owned by him ; that he had two sons, one of whom — the testator — resided at Syracuse, and the other — Arthur J.— in the State of Maryland. On the 6th day of November, 1892, the testator applied to one Babcock for a loan of $1,000, saying that *they* wanted the money for Arthur, and that his father would give a mortgage on his place in Cicero and he — Alva — would guarantee the same.   The next day he came back and delivered to Babcock the joint and several bond of himself and father, and a mortgage executed by the latter, both instruments being dated November 7, 1892, and conditioned for the payment of $1,000 in two years from date, with interest payable semi-annually.·  Babcock thereupon gave to the testator his check for $1,000, which was paid to him on presentation at the bank.

It was admitted by the defendants' counsel that, from the proceeds of this mortgage, $1,000 was received by Arthur on the seventh of November, or thereabouts, but he refused to concede that it constituted the consideration for the note in question.

On the 10th day of November, 1892, Arthur received from a lawyer at Cumberland a New York draft for $1,000, and thereupon he and his wife executed a bill of sale of their household furniture to Alva, expressing a consideration of $1,000.

It also appears that on the 7th day of November, 1892, the plaintiff conveyed to the testator the premises upon which the mortgage of that date was given, the deed expressing a consideration of one

dollar.   The mortgage and the deed were recorded on the day of their execution.

In the following month the plaintiff also assigned to the testator a life insurance policy for $2,000.

The testator died in September, 1894, leaving a will executed in February of that year, whereby he devised the mortgaged premises to his father, the plaintiff, if living, but if not surviving, then to his (testator's) wife and to his brother, Arthur J., equally, and directed that if there were any debt due from Arthur it should be deducted from his share.   The will further directed that $1,000 should be raised out of the estate and that the same be given to his father, if living.

The defendants introduced in evidence the promissory note of Arthur J. for $1,000, dated November 7, 1892, payable to the order of James Crampton two years after date, with interest payable semi-annually, and indorsed " Pay to the order of A. C. Crampton. James Crampton," and also bearing indorsements of interest paid. The signature of James Crampton, the plaintiff, on the back of the note, was admitted by him, but the words " Pay to the order of A. C. Crampton " and the interest indorsements were not in his handwriting.

The note had this indorsement : " June 5, 1893, Int. paid to May 7, '93 " Plaintiff put in evidence a receipt signed by the testator, dated June 7, 1893, in these words : " Received of A. J. Cramp- . ton $30 to cover interest *on loan* from Nov. 7, '92, to May 7, '93." Also another receipt, signed by Babcock and dated June 5, 1893, which was found among the papers of the testator, and acknowledged a payment by him of thirty dollars for interest on the mortgage from November 7, 1892, to May 7, 1893, and the same was indorsed on the bond.

The note also bore this indorsement : " Nov. 17, '93, Int. paid to Nov. 7, '93."

A letter from the testator to Arthur J., dated November 19, 1893, was read in evidence and is as follows : " Received check for $30 to cover interest *on mortgage* to Nov. 7–93.   Please be more prompt in the future as Babcock did not like this overtime."   This payment was also indorsed on the bond and Babcock gave a receipt

to the testator for the same. Another receipt, signed by the testator, dated May 4, 1894, acknowledging a payment by Arthur J. Crampton of thirty dollars for interest "*on note*" from November 7, 1893, to May 7, 1894, was read in evidence. This payment of interest on the note was applied by the testator as a payment of interest *on the bond and mortgage*, as is shown by an indorsement on the bond and the receipt of Babcock, dated May 3, 1894.

By this last receipt the money is acknowledged to have been received of *James* Crampton, but Babcock testified that the receipt was in the testator's handwriting, and that he, Babcock, never received a dollar from the plaintiff.

All these receipts were in the handwriting of the testator, except the signature of Babcock. When the testator paid interest on the mortgage, he stated that he received the money from Arthur.

After testator's death, and on February 5, 1895, Arthur paid Babcock $200 on the bond and mortgage, but neither the plaintiff nor the testator has paid any part of the principal sum secured thereby.

*William G. Tracy*, for the appellant.

*Louis W. Waters*, for the respondents.

Green, J.:

The defendants base their cause of action and their right of recovery solely upon the contract implied by law from the indorsement of the note, and rest their case upon proof of its execution and indorsement.

In the consideration of this case, it is a circumstance of particular importance to be noted, that the note and the bond and mortgage bear the same date, provide for the payment of the same amount, with interest payable semi-annually from the same date, and mature at the same time. It is undisputed that the bond and mortgage were executed to secure the payment of $1,000, borrowed of Babcock, for the purpose of loaning the same to Arthur, and that he received a draft for that amount a few days thereafter.

This money was obtained by the testator, personally, by means of a check on the bank and upon the strength of the joint and several bond of plaintiff and Alva, with a mortgage of plaintiff's property as collateral security.

There is no proof that any other loan of $1,000 was made to

Arthur on or about the date of the note, or that any other note was executed of that date. In the absence of any such proof, the only legitimate inference that can be drawn from the facts and circumstances established by the evidence, is that this note was given for the payment of the money so borrowed from Babcock and loaned to Arthur, and for nothing else. The obligors having covenanted to pay the interest semi-annually, and to pay the principal at a specified time, evidently required that the person for whom the money was procured should undertake to fulfill these obligations, either verbally or in writing. The indorsements of interest upon the note and bond, and the several receipts given for the same, and the testimony of Babcock, all go to establish the fact that all payments of interest made by Arthur were applied upon the bond, although he was not a party to that instrument, nor bound by its terms. Clearly these payments must have been made on account of this very loan and this identical note, since there is no other note in evidence.

In one instance the testator acknowledged the receipt of thirty dollars for interest on the *note* and forthwith applied it in payment of interest that became due on the bond at the very same time. This is evidence that he considered the note and bond as representing the one transaction of November 7, 1892.

All the competent and admissible evidence in this case clearly shows that the consideration of the note and the only consideration therefor was the money procured upon the joint and several bond of the plaintiff and the testator, with the plaintiff's property pledged for the performance of the covenants.

The money thus procured was loaned to Arthur, and he promised in writing that he would repay the same to the plaintiff, absolutely and at all events, or to such persons as he might direct.

Upon the trial the plaintiff called as a witness on his behalf Arthur, the maker of the note, for the purpose of testifying to a personal transaction or communication with the deceased at the time of the excution, indorsement and delivery of the note, and to establish the defense that the note was indorsed and delivered upon the understanding that the indorser was not to be liable as upon a contract or agreement to pay the deceased $1,000; that the note was delivered for safe-keeping only, and that there was no consideration for the promise implied from the indorsement. This was objected

to as inadmissible, under section 829 of the Code of Civil Procedure, and the evidence was excluded on that ground.

Defendants' contention is that the indorser was a surety for the maker, and that the latter is precluded from testifying, upon the authority of *Church* v. *Howard* (79 N. Y. 415, 420).

But an indorser, though in the nature of a surety, is liable upon an independent contract, and the rules governing the relationship of principal and surety are not, generally speaking, applicable to indorsers. (*Converse* v. *Cook*, 25 Hun, 44; cited and followed, 31 id. 419; *Wells* v. *Mann*, 45 N. Y. 330; *Newcomb* v. *Hale*, 90 id. 330.)

It is difficult to determine upon the evidence presented whether it was the understanding of the parties that the plaintiff should stand as surety for Arthur for the payment of $1,000 to the deceased, as upon a loan made *solely* by the latter, or whether it was intended as a joint loan by both. If it were a joint loan, the maker of the note would be competent to testify to a personal transaction with the deceased, for the purpose of showing that the indorser was not to be liable as indorser for the whole amount of the note. We have seen that the testator personally procured the loan from Babcock, and that the money was paid to him without any communication between Babcock and the plaintiff; he further said he would get his father to mortgage his farm, and that he would guarantee the mortgage; he also said that *they* wanted the money for Arthur. *Prima facie*, it would seem that the plaintiff should be deemed a surety for the deceased for the repayment of the money advanced to him.

But there are other circumstances to be considered in the endeavor to ascertain the true legal relationship of the parties. One circumstance is that, on the same day, the plaintiff conveyed the mortgaged premises to the testator for a nominal consideration expressed in the deed. From this fact an inference might be drawn that the conveyance was made for the purpose of securing the testator from personal loss as obligor by placing in his hands the collateral security pledged for payment of the bond. In that view of the case it might be inferred that it was intended or understood by the plaintiff and the testator that, as between themselves, the loan was to be considered as having been made to the plaintiff as principal, and that the testator should stand as surety.

Why should the plaintiff transfer the collateral security to the testator, except upon the assumption that he was but a surety in procuring the money and loaning it to Arthur ?   On the other hand, it would seem that the testator assumed the sole responsibility for the repayment of the loan by Arthur, and that in consideration of his doing so, the plaintiff transferred the collateral security and assigned his life insurance policy, and Arthur gave the testator a bill of sale of all his household furniture; the testator sent the draft for $1,000, and Arthur made this note payable to his father, who indorsed and delivered it to the testator.

Independent of this indorsement, there is no evidence that the plaintiff ever undertook to pay the testator $1,000, as surety or otherwise.   The plaintiff contends that the facts and circumstances evidenced a joint loan, and he proposed to prove by the witness that it was the understanding of the parties that he was not to be personally liable for the whole amount of the note.

The whole question here respects the liability of the plaintiff as indorser of the note of Arthur, whatever may be his liability to the estate in respect of the moneys which the defendants may be compelled to pay to Babcock.   That liability, if any exists, will be founded upon an implied contract, if an express one is not proven. He may be chargeable with one-half of the loan, or it may possibly be shown that he is liable for the whole.   The right of recovery here is based upon the independent contract of indorsement, and upon that alone must the admissibility of the evidence be determined.

The consideration for the note, if any, is the money procured upon the joint bond of the plaintiff and the testator, the latter of whom sent the draft for the amount to Arthur.   There is no direct evidence that the plaintiff undertook to stand as surety for Arthur, and the plaintiff offered to prove by the witness that there was not, in fact, any contract of indorsement to pay the deceased $1,000 if the maker should not.

In the *Church* case the action was brought against the principal and surety on a note, and the latter alleged an alteration of the note as a defense.   The principal was called as a witness to establish the defense by testifying to a personal communication with the plaintiff's intestate.   The evidence was held inadmissible, upon the ground that the witness was interested in avoiding the judgment

against the surety, as the judgment rendered would be legal evidence in an action by the surety to recover the amount paid for his principal.

But the principle of that decision is not applicable to an indorsement by the payee of a note, for a judgment against him would be no evidence in an action by the payee against the maker, and, therefore, he would neither gain nor lose by the direct legal operation and effect of the judgment. The maker is liable to the payee or indorsee upon an express promise; the liability of the principal to the surety is implied.

A surety cannot recover of his principal until he has paid in whole or in part the sum for which bound, and can only recover the amount actually paid.

But this is not so as to the payee — indorser.

In the case at bar the maker promised to pay the plaintiff the amount of the note absolutely and at all events. It was a direct promise to the supposed surety to repay a sum of money procured by means of the joint bond of the "surety" and of the indorsee. The payee would be entitled to recover the whole amount of the note, irrespective of any payments made by him to his indorsee. A surety to a note cannot, after paying the amount of it to the holder, maintain an action against the maker on the same note. His remedy is an action for money paid. The indorser of commercial paper does not stand in the same relation to the principal debtor that the surety does to his principal. On payment to the holder he can maintain an action *upon the paper*, against the prior parties. The contract which the law implies between the principal and surety is different from that raised between the maker and successive indorsers of commercial paper. At common law the maker and indorser could not be joined, for the reason that their contracts are separate and different from each other. (*Corey* v. *White*, 3 Barb. 16.)

In *Starkweather* v. *Mathews* (2 Hill, 131) the action was against the maker of a note and his accommodation indorsers, to which the defense was usury, and the maker was held a competent witness for the latter, upon being released from the costs of the suit. In the course of the opinion the court used this language: " If the defense failed, the witness would only be answerable to the indorsers for the amount of the note — not for an indemnity; and if the defense

prevailed, he would still be liable, as maker, to the plaintiff. His interest was balanced. * * * When the witness was called, he was under an apparent legal liability both ways — he was answerable both to the holder and indorsers of the note; and the possibility that he might have a better defense against the one than against the other, if it can be regarded as an interest, is too remote and contingent to exclude a witness."

In *Eisenlord* v. *Clum* (126 N. Y. 558) it was held that the expression "interest in the event," as used in section 829 of the Code of Civil Procedure, was never intended to enlarge the class to be excluded under it beyond that which the common law excluded in using the same language. And again, in the opinion in the case last referred to, the rule defining what is an interest in the event is expressed in about the same terms as those used to define the rule at common law, citing in support thereof *Hobart* v. *Hobart* (62 N. Y. 80); *Nearpass* v. *Gilman* (104 id. 506); *Wallace* v. *Straus* (113 id. 238); *Connelly* v. *O'Connor* (117 id. 91), and the conclusion arrived at is thus stated : " The cases I have cited show conclusively that such a judgment would not have been admissible in evidence at common law in any such action ; either for or against the witness, and in this respect the Code has not changed the rule."

In the case at bar the maker of the note was not interested in the event of the suit, nor was he examined as a witness in his own behalf or interest. His liability to the person who is, or may be, the legal owner and holder of the note is undisputed and indisputable. The cause of action was, apparently, assigned by the indorsement to the testator, so that he could recover the whole amount of the loan in an action upon the note. The indorser claims that he made a verbal agreement different from that evidenced by the indorsement; that the note was not delivered as a binding obligation against him, and that there was no consideration for the indorsement. The defendants have offered no affirmative proof to establish the contention, either that the plaintiff undertook to be surety for Arthur for the repayment of the loan, or that the deceased was the surety; but rely solely upon the contract implied from the indorsement.

The plaintiff does not sign as surety as in the *Church* case. In that case the fact of suretyship was admitted, and it was sought to

avoid liability on the contract by the testimony of the maker. Here there is no direct proof that the plaintiff undertook to be a surety for the repayment of the loan, and the matter is in doubt.

The plaintiff endeavored to establish by the testimony of the maker that the note was not executed until some time in January, 1894, and that the note was then drawn by the testator and dated back to the date of the original transaction, and that the indorsement was made at the time, but that the paper was not delivered as a binding obligation upon the indorser.

If that were a fact how came the indorsements of interest to be made in 1893 when the note was not in existence? The plaintiff will perhaps be able to explain this inconsistency of proof that the indorsements were copied from memoranda.

Since the money procured by the testator was raised by means of the joint bond of himself and the plaintiff, it is difficult to hold upon the evidence adduced that he was the sole and only creditor of Arthur in respect of this loan, and that the plaintiff was not also a creditor in whole or in part. The borrower promised to pay the money to him or to such person as he might direct the payment to be made. In a legal aspect the maker is not interested in the controversy as to whether the payee is or is not liable as indorser; his obligation is to pay the amount to the legal owner of the note. But the maker of a note makes no contract to pay the money to his surety on the note, but undertakes to pay to the creditor directly and to indemnify the surety against loss. Here the promise was made directly to the supposed "surety," and there was no contract of indemnity or for reimbursement of the moneys which the surety should be compelled to pay.

We are of the opinion, therefore, that the maker was a competent witness to testify to personal transactions of the deceased in an action founded upon the contract of indorsement. But with respect to the rights and liabilities of the respective parties, growing out of the loan from Babcock upon the bond and mortgage, we do not determine.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.