way from the house, or change the grades of crossings to reach the parts separated, or make the crossings more inconvenient; or cut up the land inconveniently, so as to interfere with the watering of stock, or to interrupt the flow of surface water in its accustomed channels." Mills, Em. Dom. p. 166.

By still another it is said that:

"When the plan is given, the effect can be more accurately determined; and where compensation subsequent is granted, or condemnation takes place after entry, the tribunal of assessment has frequently before it a completed work, with all its effects in evidence." Rand. Em. Dom. § 265.

And in speaking of a case like this, where a railroad had been constructed through a farm, Lewis, Em. Dom., at section 481, says:

"It may make a great difference whether it [the railroad] is built at the natural grade, or in a deep cut, or on a high embankment or trestle. If the works have actually been constructed before the damages are assessed, it has been held proper to take into consideration the actual condition of the works as affecting the damages."

The rule as thus stated by these several writers seems to us an eminently proper one, and no adequate reason suggests itself to our mind why the owner of lands who has suffered consequential damages should be put to the annoyance and expense of an independent action to recover those damages when they may be easily ascertained and adjusted in a proceeding of this character. The views which we have thus expressed lead to the conclusion that the order appealed from should be reversed, and that the commissioners already appointed should be required to embrace in their report such consequential damages as the defendants have suffered, if any, by reason of the construction and maintenance of the petitioner's road across their farm in the manner it had been constructed, and as it existed at the time this proceeding was instituted.

Order reversed, and matter remitted to the same commissioners, to ascertain and report what, if any, consequential damages the property owners are entitled to, with costs of this appeal to the appellants. All concur.

<hr/>

(42 App. Div. 536.)

### WALLACE v. SYRACUSE RAPID-TRANSIT RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. EVIDENCE—VALUE OF RACE HORSE—PEDIGREE — REGISTRATION — IDENTIFICATION.

In an action to recover for a racing mare killed by an electric car, where it appears that her name was Balleen, and that she was sired by Ballard, evidence that a mare by the name of Balleen was registered in the Turf Guide is inadmissible, especially where it is not shown that the mare so registered was the plaintiff's mare.

2. SAME—REPUTATION OF SIRE—HEARSAY.

In an action to recover for a racing mare killed by an electric car, the testimony of a witness that he had known of horses winning races which were reputed among horsemen to have been sired by the same stallion as plaintiff's mare is incompetent.

Appeal from Onondaga county court.

Action by Louis H. Wallace against the Syracuse Rapid-Transit Railway Company. From a judgment entered upon a verdict for

plaintiff, and an order denying a motion for a new trial, defendant appealed. Reversed, and new trial granted.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

C. E. Spencer, for appellant.

A. Lee Olmsted, for respondent.

ADAMS, J. On the afternoon of July 23, 1898, one of the defendant's street cars, while running upon Midland avenue in the city of Syracuse, came into collision with the plaintiff's mare, and injured her to such an extent that it became necessary to kill her. At the time of the accident the mare was being exercised by a negro boy, who was riding her, and she was traveling in a southerly direction on the easterly side of the avenue, and about 15 feet east of the tracks upon which the defendant's car was running. This car was operated by electricity, and was moving in the same direction as the plaintiff's mare; the mare being some distance ahead of the car. As the car approached, the mare took fright, and began to rear and plunge; and her rider, finding himself unable to manage her, raised his hand as a signal of distress. The evidence tends to show that at this time the car was about 60 feet distant from the mare, and in a few seconds thereafter the mare moved rapidly sidewise and backwards towards the car, and was then struck by the southeast corner of the car, receiving the injuries complained of. At or about the time of the accident the car was running at the rate of 8 or 10 miles an hour, which, it is conceded by the plaintiff, was neither an unusual nor an improper rate of speed; and the only negligence complained of is that the motorman failed to observe the following rule, which had been previously adopted by the defendant for the information and government of its employés:

"If a horse or any other animal becomes frightened at the approach of your car, stop until the animal passes."

Upon examining the record in this case, we find that the evidence bearing upon the question of the defendant's negligence is not altogether satisfactory, nor are we by any means certain that it is sufficient to support the plaintiff's recovery; but we do not deem it necessary to determine that question, inasmuch as we have reached the conclusion that a new trial must be granted by reason of certain erroneous rulings of the trial court.

It seems that the plaintiff's mare was a race horse, and that her value depended in a large measure upon her pedigree, and upon the fact that her pedigree was such as to entitle her to be registered in what is known as the "Turf Guide." Upon the trial it was made to appear that the mare's name was Balleen, and that she was sired by a stallion by the name of Ballard; and the plaintiff was permitted, over the defendant's objection, and subject to an exception, to prove that a mare by the name of Balleen was registered in this book. In like manner the plaintiff was permitted to show, by a witness by the name of Durker, that he had known of horses winning races which were reputed among horsemen to have been sired

by the stallion Ballard. We think evidence of this character was clearly inadmissible in this case, inasmuch as the pedigree of the plaintiff's mare was not directly in issue, and was only relevant to the real issue by reason of its bearing upon the question of value. Am. & Eng. Enc. Law (1st Ed.) p. 74; Eisenlord v. Clum, 126 N. Y. 552–566, 27 N. E. 1024.

Moreover, the evidence fails to establish the fact that the mare registered in the turf book under the name of Balleen was the plaintiff's mare. It is true that the witness Durker testified that it was not usual to register two horses of the same generation under the same name; but this witness also testified that he did not know who gave the name of Balleen to the plaintiff's horse, that all he knew about it was that the plaintiff called her Balleen, and that he found the name Balleen in the turf book; and this evidence was supplemented by that of another witness, whose statement was not denied, that it was not an unusual thing for an unregistered horse to bear the name of one that was registered. That this character of evidence was highly prejudicial to the defendant is manifest from the fact that nearly all of the witnesses upon the question of value based their estimate upon the circumstance that the mare was a thoroughbred, and, as such, entitled to registry. The plaintiff's witnesses stated that, in their opinion, the mare was worth anywhere from $500 to $1,000, while the defendant's witnesses placed her value at about $150; but, upon cross-examination, they admitted that, if the mare was a registered thoroughbred, their estimate of her value was incorrect, and the verdict of the jury would seem to indicate that the evidence as to the pedigree of the mare, and that she was registered in the turf book, was quite potential in determining the conclusion reached by them upon the question of value.

The judgment and order should, consequently, be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.