In order the better to determine the relations of Day and Fennelly, or either of them, to the respective parties, it is essential to compass all the facts leading up and pertaining to the payment of the money to Fennelly by Day. The legitimate deductions from these facts, I think, satisfactorily establish that both Day and Fennelly represented the plaintiff. However, if either was her agent in getting this money into the hands of Fennelly, the plaintiff cannot recover.

The judgment should be reversed.

Judgment reversed, and a new trial granted on the law and facts, with costs to the appellant to abide event. All concur.

---

### In re BLAINE'S WILL.

(Supreme Court, Appellate Division, Fourth Department.   March 8, 1911.)

1. WILLS (§§ 52, 163*)—MENTAL CAPACITY—UNDUE INFLUENCE—BURDEN OF PROOF.

   In a contest over the probate of a will, the burden is on contestant to show mental incapacity and undue influence, after the prima facie case made by the witnesses to will is in.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. §§ 52, 163.*]

2. WITNESSES (§ 140*)—COMPETENCY—TESTIMONY OF INTERESTED PARTIES.

   In proceedings to probate a will giving testator's property all to his wife, the wife of a brother of the testator, who would, if probate be denied, be entitled to one-third of the real estate, is incompetent to testify as to personal transactions with testator tending to show that he was mentally incompetent to make a will, under Code Civ. Proc. § 829, forbidding any one interested in the event to be examined as a witness in his own behalf or interest against the executor, administrator, or survivor of a deceased person concerning a personal transaction or communication between the witness and decedent.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598–618; Dec. Dig. § 140.*]

Appeal from Surrogate's Court, Seneca County.

In the matter of the probate of the will of W. Frank Blaine. There was a decree of the Surrogate's Court that the written instrument propounded for probate was not entitled to probate, and the widow of W. Frank Blaine appeals. Reversed, and trial by jury directed of the issues whether W. Frank Blaine possessed testamentary capacity at the time of the execution of the alleged will, and whether the excution was procured by fraud or undue influence.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

David M. Dean, for appellant.

J. N. Hammond, for respondent.

SPRING, J.   W. Frank Blaine died January 23, 1909, leaving him surviving his widow, the appellant, and one sister and two brothers, each of full age, his only heirs at law and next of kin. He was married to the appellant in January, 1904, and executed the instrument propounded on the 5th of the succeeding May, by which he gave all

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of his property to his wife, consisting of both real and personal estate of the value of about $18,000, and she was also named as sole executrix of said will. Upon the return of the citation for the probate of the will, objections to its probate were filed by Chester G. Blaine, brother of the decedent. Probate was refused, on the ground of the mental incapacity of the decedent to make a will, and that was the only question at issue.

It appears that shortly after the execution of the will proceedings were commenced to determine as to the competency of Mr. Blaine to manage his property and affairs, and proof was taken before the jury, and its inquisition signed May 19, 1904, to the effect that he was incapable to govern himself or his property, and this inquisition was subsequently confirmed, and the wife was appointed the committee of his person and estate. The inquisition determined that his mental infirmity dated from about April 1, 1904.

There does not seem to be much controversy over the proposition that Mr. Blaine was suffering from paresis and at times was incapacitated from attending to his affairs. Witnesses testified on behalf of the contestant to acts which impressed them as being irrational; and others, on behalf of the proponent, indicating at the time they occurred, and some of which were near the time of the execution of the will, that the decedent comprehended the business he was transacting and apparently was competent to make a will.

Two physicians testified on behalf of the contestant, and an elaborate hypothetical question, embodying all the facts which had been proven from the point of view of the contestant, was propounded to them, and each testified that these facts denoted that Mr. Blaine was afflicted with paresis; that it is a progressive disease, and at the time the will was executed he was incompetent to make a will. A hypothetical question similar in its facts to that above mentioned was propounded to four medical experts on behalf of the proponent, and they agreed that the facts indicated that he was afflicted with paresis, and that it was a progressive and incurable disease. They, however, testified that there was nothing in the facts mentioned to support the inference that he did not possess sufficient capacity to make a will on the 5th of May, 1904, and in their opinion he did possess sufficient capacity for that purpose at that time.

The will was drawn by Judge Townsend, the county judge and surrogate of the county and a casual acquaintance of Mr. Blaine. Judge Townsend and Dr. Gould, a brother-in-law of the testator, signed the will as subscribing witnesses, and their version of the transaction indicates that the testator comprehended the act which he was performing.

I have gone over these facts in a very summary way, not for the purpose of passing upon the merits of the controversy, but in order to show there was a genuine contest over the mental condition of Mr. Blaine, and different inferences might well be drawn from the testimony contained in the record.

The burden is upon the contestants. The amount of property involved is considerable. The decedent left no direct descendants. The

will, on its face, appears to make a just disposition of his property. There is no evidence of the exercise of undue influence, and the witnesses testifying to the execution of the will are clear in their narration of the transaction, and their evidence, taken by itself, indicates that the testator was competent to execute the will, and the facts should be passed upon by a jury. Section 2588, Code of Civil Procedure; Matter of Burtis, 107 App. Div. 51, 94 N. Y. Supp. 961; Matter of Jeffrey, 129 App. Div. 791, 114 N. Y. Supp. 667; Matter of Eckler, 126 App. Div. 199, 110 N. Y. Supp. 650, and cases cited; Matter of Richardson, 137 App. Div. 103, 122 N. Y. Supp. 83; Matter of Finch, 115 App. Div. 871, 101 N. Y. Supp. 135.

The rule is thus stated in Matter of Richardson, 137 App. Div. at page 104, 122 N. Y. Supp. at page 84:

"We think that those issues should be passed upon by a jury. Such a determination of the appellate court does not necessarily proceed from the conclusion that the Surrogate's Court was positively wrong in the result reached upon the facts, but is the approved course where the disposition which should be made of the questions of fact presented by the evidence is not free from doubt, and the result reached in the Surrogate's Court is not entirely satisfactory to the appellate court."

There was also evidence erroneously admitted which requires a reversal of the decree, and which it is necessary to consider, as there is to be a new trial.

Millard Blaine, a brother of the decedent, did not join in the contest. His wife was a material witness, however, on behalf of the contestant, and testified that on the 3d of May, 1904, Mr. Blaine was at her house. She walked on the street with him; that he was unsteady in his gait, inclined "to walk off the walk," and she guided him. At this time he told her that he, with others, had purchased the Ovid Fair Grounds and given their note for it, and his share of the obligation was $8,000,000, and that the note "would ruin him"; and the witness testified that the acts she described impressed her "as being irrational." The witness also described a visit of Mr. Blaine to her house about two weeks after he was married. She testified to the manner of his speech, his inability to finish sentences which he started, or to recall words, and narrated his conduct at dinner, which was susceptible to the inference that he was acting irrationally. The witness' sister was present at the latter visit and corroborated the account referred to. All of this testimony of Mrs. Blaine was objected to strenuously on the ground that the witness was disqualified from testifying to these personal transactions with the testator and that she was within the prohibition of section 829 of the Code of Civil Procedure, and exceptions were duly taken.

I think the admitted evidence was very material. The last visit and transaction occurred only two days before the execution of the will. The court certainly might infer from this evidence that at that time at least Mr. Blaine was mentally incompetent. These two transactions are incorporated with much particularity in the hypothetical question propounded to the medical experts on behalf of the contestant, and the importance and significance attached to them is obvious.

Iu my opinion the witness was incompetent to testify to these personal transactions. With the will rejected, her husband would become vested, subject to the dower interest of the widow of the decedent, with the fee title to one-third of the real estate of which the decedent died seised, and his wife would have an inchoate dower interest in the land thus acquired. The property interest would be a subsisting, tangible, valuable one, making her a "person interested in the event." Simar v. Canaday, 53 N. Y. 298, 303, 13 Am. Rep. 523 et seq.; Clifford v. Kampfe, 147 N. Y. 383, 42 N. E. 1; Steele v. Ward, 30 Hun, 555; Erwin v. Erwin et al., 54 Hun, 166, 7 N. Y. Supp. 365; In re Hewitt, 21 N. Y. Wkly. Dig. 296; Baldwin v. Walker et al., 67 Hun, 651, 23 N. Y. Supp. 1149; Matter of Clark, 40 Hun, 233, 237.

The principal case upon which the respondent relies to sustain the competency of the witness Mrs. Blaine is Eisenlord v. Clum et al., 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836. In that case the plaintiff brought an action of ejectment as the son and sole heir of Eisenlord, deceased intestate, and the sole question at issue was whether he was the legitimate son of the decedent. Margaret Lipe, the mother of the plaintiff, was a witness in his behalf, and an attempt was made to prove the marriage by her to Eisenlord previous to the birth of her son, and the evidence was excluded upon the ground that she was a person interested in the event, as it was claimed she would be entitled to dower in the premises in suit if the title of her son was established in the action. The Court of Appeals reversed the judgment in favor of the defendants because of the exclusion of this evidence.

The case, it seems to me, is distinguishable from the one we are reviewing. The court held in that case that the mother was not a person interested in the event, for the reason that a judgment which her son might recover, establishing that he was the son of Eisenlord, deceased, and consequently the owner of the premises of which his father died seised, would not be competent evidence in an action to admeasure her dower in the lands. That reason is not applicable to this case. The husband of Mrs. Blaine was served with a citation for the probate of the will, although he did not appear. The decree rejecting the will is effective as to him, and her inchoate dower interest is derived from her husband, not from the decedent, so that title accruing to the husband ipso facto operates to establish her dower interest. In the Eisenlord Case the widow's dower interest would be derivable directly from her deceased husband, and her right to it must be established in an action or proceeding where that right was in issue. It could not be founded on a judgment in an action to which she was not a party and where the issue was not directly raised. Had her interest been derivable from her son, instead of her husband, the Eisenlord Case might have been an authority for the competency of the witness Mrs. Blaine.

The decree of the Surrogate's Court should be reversed, with costs to the appellant to abide the event, and a trial by jury of the issues of fact directed, as is provided by section 2588 of the Code of Civil Procedure.

So ordered. All concur.