CORDELIA F. SHIMMEL, Appellant, v. EMILY MORSE, Individually, and as Executrix, etc., of EMILIE OSTHEIM, Deceased, and Others, Respondents.

*Amicable adjustment of the affairs of an estate, assented to by all parties — not disturbed many years after the executors' accounts are approved.*

Five children of a testatrix, who owed no debts, except to one of her executors, entered into an arrangement by which certain real property of which she died seized was to be conveyed to one of them by the executors, to whom mortgages were to be given back, which were to be used to pay in part the claim existing in favor of the executor against the testatrix. The accounts of the executors were subsequently duly passed by the Surrogate's Court, these mortgages being reported by the executors to be assets in their hands, and by a decree entered in that proceeding the executors were released from further liability, and it was directed that the balance in their hands should be applied to the claim of the executor. No steps were ever taken to set aside such decree.

*Held,* that a daughter of the testatrix, who was an active participant in the accomplishment of the arrangement, and had received material advantages because of her consent thereto, and had substantiated the executor's claim before the surrogate, could not, after the lapse of over twenty years, repudiate her acts and claim an interest in the property;

That the decree of the surrogate was binding upon her as a party and as one who helped to procure its rendition.

APPEAL by the plaintiff, Cordelia F. Shimmel, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 16th day of March, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*Robert L. Redfield,* for the appellant.

*Seth Sprague Terry,* for the respondent, The Bowery Savings Bank.

*J. H. Brewster, Jr.,* for the respondents Morse and Richmond.

Order affirmed, with costs, on the opinion of the court below.

The following is the opinion of the court below:

RUSSELL, J. :

In stating the result reached in these cases it is unnecessary to allude to many of the details of the transactions affecting the title to the Thirty-fourth street and Hudson street properties in which

the plaintiff now seeks to reach an interest arising out of events occurring more than twenty years ago.

Her mother, Emilie Ostheim, died in May, 1874, seized of these premises, and by her will, probated June 20, 1874, devised to her daughter, Mrs. Emily Morse, and her son, Felix Ostheim, as trust executors, these properties to divide the proceeds among her five children.

The main controversy is over the Thirty-fourth street property which is conceded to have been worth, at the time Mrs. Ostheim died, the sum of $22,000 and was subject to a mortgage of $11,000. There were family reasons why this house should be kept in the ownership of one of the children and not sold to a stranger. No debts to outsiders intervened to prevent the five children from making such arrangement as they saw fit. Accordingly it was planned that the executors should not sell to a purchaser for cash, but use should be made of a claim which Mrs. Morse, executrix, held against the deceased mother, a conveyance should be made to the son, Albert Ostheim, mortgages given back to the amount of $14,350.67, and such mortgages should be reported by the executors as assets to apply in part payment of the claim of the executrix, Mrs. Morse. On the 14th of July, 1877, Mrs. Morse and Felix Ostheim, as executors, conveyed the premises accordingly to Albert Ostheim, and the arrangement was carried out as contemplated. By subsequent conveyances the title became vested in the defendant Mrs. Richmond, who is the daughter of Mrs. Morse. Her title is subject to a mortgage given for value to the Bowery Savings Bank, and also to certain mortgages to her mother, Mrs. Morse, reaching back to the original consideration of the mortgages given in part satisfaction of Mrs. Morse's claim against Mrs. Ostheim.

On the 10th day of October, 1882, Mrs. Morse and Felix Ostheim, executrix and executor, accounted before the surrogate of the county of New York, charging themselves with the two mortgages to the amount of $14,350.67, and it was on such accounting adjudged that the executors were released from any further liability, and that the balance, treating the mortgages as assets, of $9,384.98, should be applied upon the claim of Mrs. Morse of $15,446.15, with interest from February 28, 1874. No steps have ever been taken to set aside this judicial determination.

The details of the claim of Mrs. Morse against her mother were not given in evidence on this trial by original proof, but that claim had some substantial foundation, and was verified by the plaintiff before the surrogate. The plaintiff has received material benefits from her sister, Mrs. Morse, and the daughter, Mrs. Richmond, in contributions of money and otherwise, and a home with them in their Thirty-fourth street property. The dealings of the parties for over twenty years, including all of those who were interested in the due execution of the will of Mrs. Ostheim, have been governed by the assumed acceptance of the transactions by which the title eventually came to Mrs. Richmond.

It is very plain that the plaintiff, or either of the others interested, could have strenuously objected to the manner in which the trust was executed by the executor and executrix, if such choice had been made, and it is not probable that such an execution would have been contemplated without the willing consent of all. The plaintiff was an active participant in the manner of its accomplishment; has received material advantages flowing from her assent to its execution. She could not lend a willing hand to take the property from the estate, vest it in her brother, eventually in her niece, and at the same time carry in the other hand a weapon to strike down its validity when from subsequent humor or interest she chose to repudiate the acts which had been executed, and insist upon a contrary course which might have been originally taken but for her own willing participation.

It is also apparent that the decree of the surrogate was of binding force upon her as a party and as one who helped to procure its rendition. No doubt a hidden device by which a trustee secures ultimately to himself property, which by duty he was forbidden to transfer directly to himself, will not be protected by the adjudication of the surrogate on his accounting as executor. (*Fulton* v. *Whitney*, 66 N. Y. 548.)

But the decree of the surrogate reaches to settle forever all questions which come properly before him for decision, even though the effect of it may shelter an executor from breach of trust duty. (*Mutual Life Ins. Co.* v. *Schwaner*, 36 Hun, 373; affd. on opinion of General Term, 101 N. Y. 681.)

Here the plaintiff affirmed to the surrogate that the claim of the

creditor, Mrs. Morse, was a just one; the funds realized by the sale of the property were placed subject to the order of the surrogate, with willing acquiescence of all who were interested in that fund or the property from which it was derived; the portion which was left after paying other charges was devoted to part satisfaction of the claim of Mrs. Morse.

It becomes, therefore, an adjudication of binding force upon all the parties that the amount of the claim was as stated, its origin just, and that the proceeds of the real property which had passed away from the estate were properly devoted to the claim of Mrs. Morse. The conclusion as to the legal effect of that decree necessarily follows, that the *corpus* of the real property had passed into personalty and was lawfully disposed of by a competent tribunal.

We, therefore, see that by choice as to the method of disposition of property of her mother; by ratification; by the absence of any legal action for a period longer than that fixed by the Statute of Limitations, and by adjudication of the Surrogate's Court, the plaintiff's original right to insist upon a different method of execution of the trust created in 1874 has entirely passed away.

The questions arising as to the Hudson street property are of smaller importance. That property is stipulated to have been worth the sum of $10,000 and it was subject to a mortgage of $5,200. It was conveyed to Mrs. Richmond and the consideration of the conveyance paid to satisfy a part of the balance owing to Mrs. Morse. The considerations which determine the result in the matter of the Thirty-fourth street property so largely pertain to the transaction in regard to the Hudson street property that a similar result must be reached.

Judgments for defendants in accordance with this opinion, with costs.