(34 Misc. Rep. 333.)

PUTNAM v. LINCOLN SAFE–DEPOSIT CO. et al.

(Supreme Court, Special Term, New York County.  March, 1901.)

WILL—CONSTRUCTION—TRUST.

    A will provided for the appointment of one P. as trustee for his wife, a daughter of the testator, and that all moneys devised to the daughter should be subject to the control of. the trustee for the benefit of said daughter and her children, and upon the death of said daughter all of the property to pass to her children, including the lineal descendants of any deceased child, taking per stirpes, share and share alike. Another clause gave to each of his children, including said beneficiary, a certain sum, less advances. The residuary estate was given to testator's executors for two years, and then over to his children equally, with a provision that all bequests and conditions of the residuary estate should be subject to the limitations and conditions of the will as to each of the children. P. died in 1899, and in 1900 the beneficiary died and devised all her estate to her son I., to the exclusion of her other sons. *Held,* that the beneficiary of the trust estate took the residuary estate under the same trust, and that she could not devise it, and that upon her death it went to her three children in equal shares, by virtue of the original will.

Action by Robert M. S. Putnam against the Lincoln Safe-Deposit Company and others to construe a will. Decree entered.

Stickney, Spencer & Ordway (Albert Stickney and Otto C. Wierum, Jr., of counsel), for plaintiff.

C. H. Sturges, for Israel Putnam and in pro. per.

A. Pennington Whitehead, Nash Rockwood, and Edgar T. Brackett, for John R. Putnam.

Corliss Sheldon, in pro. per.

Samuel Hoff, for. Lincoln Safe-Deposit Co.

RUSSELL, J.  The subject of the controversy is the share of his estate left in trust for Mary S. Putnam, deceased, for life, or absolutely, by her father, Robert M. Shoemaker, of Cincinnati, Ohio, by will dated November 27, 1882; he dying February 10, 1885.  The contest lies between the plaintiff Robert and his brother John R. Putnam, of united interest, against their brother Israel Putnam, who claims the whole as sole legatee and devisee of Mary S. Putnam, their common mother.  If Mrs. Putnam took absolutely, the son Israel takes all; if not, he divides equally with his two brothers.  The issue depends upon the rightful answer to the question, is there any effective force in the eighteenth paragraph of the will of the maternal grandfather, Shoemaker, which reads as follows?

"Eighteenth.  I further hereby appoint my son-in-law John R. Putnam as trustee for his wife, my daughter Mary, and it is my will and direction that all moneys, rents, and property of whatever kind, under or by authority of this will advanced, paid to, or devised to my daughter Mary shall, subject to the provisions of this will as to the management of my estate by my executors, pass to and be managed by my said son-in-law, John R. Putnam, at his discretion, for the benefit of my said daughter Mary and her children, including the lineal descendants of any deceased child, and upon the death of my said daughter all of said property and her share in my estate shall pass to and become the property of her children, including the lineal descendants of any deceased child, taking per stirpes, share and share alike."

If the husband, John R. Putnam, took no title as trustee, the provisions as to him conveyed no authority whatever, and he could do no effective thing for the benefit of the wife, Mary, or her children, or the lineal descendants of any deceased child.  If her children took no direct interest from their grandfather's will, her share in his estate would not pass to and become the property of her children, except through her good pleasure solely, and not in the slightest degree because the grandfather willed it, nor would the lineal descendants of any deceased child take from the grandfather at all, or in any other way than by the act of Mrs. Putnam; and so the purpose of the donor of the bounty would be defeated in an important part of his plan of distribution, the reasons for which he alone fully knew, and for the scheme of which he had the undoubted right to provide.  I think the testator did intend this eighteenth clause to have legal force and effect, both from its language, and the otherwise absurdity of its insertion; that he did mean that his grandchildren and the lineal descendants of a deceased grandchild should take from his will, and not from that of an intermediary beneficiary; and that the reasons for the protection of a trust, as those reasons had moving force in his mind and impelled his solemn act, required a trust title in the husband which was not a counterfeit.  I find no words of such fixed legal import as to control the obvious meaning of the testator, and so narrow the language in constructive power that the daughter takes the whole absolutely, and the benefits to the grandchildren with the trust to the husband drop into a legal vacuum.  The law does not require the words of a devise or bequest to follow a beaten path of adjudicated phraseology, but seeks to effectuate the wishes of a testator if his language is sufficiently expressive to disclose his intent (Kiah v. Grenier, 56 N. Y. 220), even

though five-sixths were freed from the trust (Morse v. Morse, 85 N. Y. 53), or the devise for life was for support and maintenance (Donovan v. Van De Mark, 78 N. Y. 244), and where the trustee was to pay over the incomes of the sons' parts to them (Felter v. Ackerson, 35 App. Div. 282, 55 N. Y. Supp. 7). "There is no magic in particular words." Tobias v. Ketchum, 32 N. Y. 319; Brewster v. Striker, 2 N. Y. 19; Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. When the testator legally stated in the testament that "upon the death of my said daughter all of said property and her share in my estate shall pass to and become the property of her children," he meant that this devolution should come by force of his will, and not because she refrained from diverting that property which she received only by force of the same will. And when he declared that share should "pass to the son-in-law, * * * for the benefit of my said daughter Mary and her children," he meant a trust for preservation and not destruction of the interests of both daughter and her children. Nor will the suggestion that he may have meant to confer a power in trust for the benefit of the daughter alone answer the question as to what the testator could have otherwise meant. A power in trust is a technical authority to do an act in relation to real estate to accomplish an ultimate purpose. Here none is apparent unless for the years of the daughter's life the conservation of the children's interests derived from the instrument creating the power is contemplated, and thus that remainder interest recognized and protected. No power of attorney in relation to realty or personalty can survive the donor of the power unless coupled with an interest in the donee in the property itself. Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589. The will of the grandfather was executed in the state of Ohio, of which he was a resident; but he also knew that the share for the benefit of Mrs. Putnam and her children was to be enjoyed in the state of New York, of which state Judge Putnam and his wife had long been residents. However, the law of the state of Ohio is prima facie the same as that of New York. Monroe v. Douglass, 5 N. Y. 447. As appears from the decisions of the Ohio supreme court, the rule there recognizes as controlling the purpose of the testator as indicated by the will. Carter v. Reddish, 32 Ohio St. 1. A will gave to the wife absolutely the property of the testator, but it was held that a subsequent clause stating that if any of the property remained unconsumed at her decease the same should be equally divided between the testator's brothers and sisters modified the absolute gift, created an estate in remainder in the brothers and sisters, and constituted the widow a trustee of the remainder. Johnson v. Johnson, 51 Ohio St. 446, 38 N. E. 61; Huston v. Craighead, 23 Ohio St. 198.

I have so far considered the case as though the testator had made no provision devising or bequeathing his property to his five children and the descendants of those who died before his decease in a way different from that which would have taken place by operation of law in case of intestacy. As the share in controversy did come by force of the same will, it is necessary to consider whether there is any overruling expression of intent which limits or modifies

the interests passed to the children of Mrs. Putnam, and the trust to Judge Putnam. The disposing clauses of the will gave a specific legacy of $50,000, less advancements, and one-fifth of the residuary estate. The clauses read as follows:

"Fourth. I will and devise to my sons, Robt. H., Murray C., and Michael M. Shoemaker, and to my daughters, Mary S. Putnam and Henrietta Christopher, each the sum of fifty thousand dollars ($50,000), a portion of which sum of fifty thousand dollars has already been advanced to each of them, and the amount so advanced to each is charged to and against each one of them, respectively, in my book accounts, a memorandum or transcript of which advances made to each up to this date is attached hereto and made a part of this will; the residue of said sum of fifty thousand dollars not already advanced to each of said children, less any further additional amounts that I may hereafter before my decease advance to each or either of them to make the full sum of fifty thousand dollars, including advances made and that hereafter may be made, and to make them equal each to each in this behalf, is to be paid to each of them, or to the descendants of such of them as may be deceased, without allowing interest therein, within six months after my death; the bequests in this item mentioned to be paid and satisfied, within six months after my death, out of such good interest-paying securities belonging to my estate at the time of my death as my executors shall designate and set apart for that purpose, so as to make each in that respect equal."

"Twenty-First. I give and bequeath all the residue of my estate, both real and personal, of whatever kind and wherever situated, and not hereinbefore specially devised to my said executors in this will named, and to the survivor or survivors of them, to be held in trust for the uses and purposes following: that is to say, to hold, manage, and control in the best and most careful manner until the final execution of all the several duties and functions herein charged and imposed upon them, with power in their discretion to sell, convey, or otherwise dispose of, and the proceeds to reinvest, except the property hereinbefore specifically devised, any real estate, stock, bonds, or personal property, of whatever kind, belonging to my estate; and, after the previous provisions and bequests of this my last will shall have been carried out and satisfied, then all the residue of my estate, of whatever kind or character, and wherever situated, shall, until as hereinafter directed, be by my executors, and survivors or survivor of them, held as the property of my estate entire, and be invested as herein directed, and the rents, issues, and profits, after paying taxes, insurance, and cost of management, shall, until two years after my decease, be equally divided among my five children, or, in case of the death of either of my five children, then among the surviving children and the children—my grandchildren—of such deceased child; the child or children of such deceased child of mine to take the share of such rents, issues, and profits the deceased parent would have taken if alive; and then at the expiration of two years after my decease all the property, real and personal, belonging to my estate, and not in this will otherwise disposed of, and subject to the restrictions and limitations hereinbefore provided, shall be divided, or, if sold, the property or proceeds of sale be divided equally among my five children, share and share alike, or their lineal heirs, such heir or heirs taking only the share his heir or their parent would have taken if alive: provided, that all the bequests and conditions of this item are and shall be subject to the bequests, limitations, and conditions of this will as to each of my said children. Whenever a bequest in money is made in this will, or a fund provided to be raised or set apart for any purpose, I authorize my executors to substitute therefor, at their discretion, any stocks or securities, at a fair valuation in cash to be made by them, that may belong to my estate, to pass as bequests, or to be held in lieu of the fund so bequeathed or provided to be set apart."

If there had been no specific or residuary bequest or devise to Mrs. Putnam, as a matter of course there would have been no property upon which the eighteenth clause could operate, and that eight-

eenth clause necessarily refers to the provisions in the fourth and twenty-first clauses as providing for the share the testator designed to protect for the benefit of Mrs. Putnam and her children. The testator's purpose, evidently, was to indicate an intention of treating his five children equally as to the shares bequeathed or devised, with, however, the express provision "that all of the bequests and conditions of this item are and shall be subject to the bequests, limitations, and conditions of this will as to each of my said children." To give this proviso full effect, we must search the will to find out what bequests, limitations, and conditions he had determined that the bequests and conditions of the residuary item should be subject to. We find that the bequest to Mrs. Putnam is subjected by the eighteenth clause to the bequest to Judge Putnam in trust and to the grandchildren in remainder; that the limitations of title conferred by the bequests are the trust title and remainder benefits therein referred to; and that the conditions include the contingency of the beneficial interest passing by force of the will to the children of Mrs. Putnam surviving at her death, and the descendants of those who should then have passed away. Thus the twenty-first clause strengthens rather than weakens the construction that the grandchildren took an interest direct from the will, the period of enjoyment being postponed until the death of their mother.

There has also been a judicial determination in the state of Ohio which might well have here the force of a former adjudication upon the matters involved. An action was begun in February, 1887, in the court of common pleas in that state by the surviving executor of the will of the grandfather, for the construction of that will, making, among others, Mrs. Putnam, Judge Putnam, and their three sons, now litigants here, parties, and averring in the petition that Robert H. Shoemaker and John R. Putnam were by said will constituted trustees for certain purposes therein indicated. Jurisdiction was gained of all the parties, trial had, and decree entered August 11, 1887. By that decree it was adjudicated that the specific legacies vested in the five children of the testator at the time of his death; that it was also his intention to vest the residuary in the five children at his death, but that the share of Mrs. Putnam was to be held in trust by her husband, John R. Putnam, in accordance with the terms of the eighteenth item of said will, and devolved upon her death as in said eighteenth item specified. Judge and Mrs. Putnam gave notice of appeal, but no further steps seem to have been taken in that direction. For 12 years thereafter Judge Putnam acted as trustee with title, so far as the evidence discloses, and until shortly prior to his death in 1899. As to the residuary share, therefore (that being the really important subject here in controversy, the $50,000 specific legacy having been reduced to about $20,000 by advancements), the three sons had the right to rely on the adjudication recognizing their interests under the will, and the trust to protect those interests, free from any power of diversion by the trustee or life beneficiary, and suffer the care and disposition of the property and its income, into whatever form the corpus

was changed, to proceed under the will and decree, as an accepted arrangement, acquiesced in for many years for family reasons, powerful to preserve the family ties in unity and concord. Shimmel v. Morse, 57 App. Div. 434, 63 N. Y. Supp. 322, 68 N. Y. Supp. 1148. If, however, force is given to the Ohio decree and the evident acquiescence of the parties in interest, the distinction made between the specific legacy and the residuary must be recognized, and the balance of the former, less advancements, be credited as belonging to Mrs. Putnam, which she had the right to use up if she chose. Mrs. Putnam died September 30, 1900, leaving a will bequeathing and devising all her property to the son Israel. Judge Putnam died at Hong Kong November 28, 1899. On the 14th day of July, 1899, he conveyed as trustee to Mrs. Putnam an interest in the Arcade property, Saratoga Springs, which interest had been conveyed to him as trustee by the executor of the grandfather April 13, 1898. It is gravely urged that a recognition of the rights of the three children will cast a slur on the name of the husband, who was an honored justice of the supreme court of this state, and that his latest act indicated his individual construction that under the grandfather's will Mrs. Putnam should rightfully have all the property. This would not be of avail against the legal rights of the children, even were such an inference correct. It may, however, be easily seen that, conscious of advancing age and possible physical weakness necessitating a long sea voyage, Judge Putnam may have wished to leave the practical control to the wife, who was the mother of their children, knowing well that his act gave her no greater interest than she might possess, and put no obstacle in the way of the children asserting whatever right they had. Nor do I think any estate tail was created by the will. Such an estate is created in realty alone. There is no evidence in that will of an intent to tie up mixed real and personal property in such a way.

The trust having terminated by the death of Mrs. Putnam, the three sons are entitled to the property, except the specific legacy. An accounting should be had, and a reference to report the same, and the situation of the trust property and its equitable division. The securities in the deposit boxes of the Lincoln Safe-Deposit Company might remain there till the final judgment, with due arrangement for collection of interest coupons. All other questions are reserved to final judgment.

Ordered accordingly.