(39 Misc. Rep. 738.)

PUTNAM v. LINCOLN SAFE–DEPOSIT CO. et al.

(Supreme Court, Special Term, St. Lawrence County. February, 1903.)

1. TRUST—MINGLING MONEYS OF BENEFICIARIES—ADMISSIONS OF TRUSTEE.

   In an action in another state a foreign will had been declared to create in the husband of a child of the testator a valid active trust for her benefit and that of her children, with remainder to them in fee after her death. The husband and wife resided in New York, and dealt with the estate as if it belonged to the wife and the children, disregarding the trust, and the husband put trust securities in the name of the wife, and bought new securities with trust moneys in her name, and kept a joint bank account, and had access to the trust securities, which were kept with the defendant security company. After the husband's death, which preceded that of his wife by about ten months, a statement was found of the trust estate, which showed the amount thereof, and that the commissions and expenses of the trustee had been paid, and that certain securities belonged to the trust estate. There was also found a note by the wife to the husband as trustee, which balanced the account. *Held*, that such statement was competent evidence against the wife and her estate to show the true ownership of the securities found.

2. SAME—TRANSACTION WITH DECEDENT.

   Where a husband, trustee for his wife and children, together with his wife, treated the estate as her own, and made a written statement while his wife was living as to the condition of the trust estate, on his subsequent death, followed by hers, such statement was admissible as against

the estate of the wife, and was not incompetent under Code Civ. Proc. § 829, on the ground that the trustee, if living, would be an incompetent witness against her estate.

Action by Robert M. S. Putnam against the Lincoln Safe-Deposit Company and others. Motion to confirm report of referee. Modified and approved.

Albert Stickney and Otto C. Wierum, Jr., for plaintiff.
Samuel Hoff, for Safe-Deposit Company.
Edgar T. Brackett and Nash Rockwood, for defendant John R. Putnam.
C. H. Sturges, in person and for Israel Putnam.
Corliss Sheldon, for administrator of John R. Putnam.

KELLOGG, J. The interlocutory judgment herein (34 Misc. Rep. 333, 69 N. Y. Supp. 808, 66 App. Div. 136, 72 N. Y. Supp. 968) establishes that Judge Putnam was trustee for his wife and her children under the will of Robert M. Shoemaker, his wife's father, and the only question here is to determine whether certain property belonged to Mrs. Putnam, and goes by her will to one of her sons, or belonged to the trust estate, and goes under her father's will to her three sons. The referee has found the property belongs to the trust estate. No persons are interested in the question except the three sons. The report of the referee is so full and convincing as to his reasons that it is necessary to say but little in addition to it. The will in question was an Ohio will, and notwithstanding the fact that the Ohio courts had decided before this property came to Justice Putnam that there was a valid trust, and that he took title as trustee, it is evident that Judge Putnam acted in the administration of the estate to quite an extent, in the belief that there was no legal trust, and that he was simply the manager of the estate for the benefit of his wife, and that the children were to have what was left of it at her death. From the answer of Mrs. Putnam and the conduct of the estate it is evident that she also took this same view of the situation. Mrs. Putnam survived her husband but a very short time, and consequently this case rests to quite an extent upon inferences to be drawn from the few facts which are established. We find almost immediately after the receipt of the trust property a box in the defendant Safe-Deposit Company's vault is rented in the name of John R. or Mary S. Putnam, to which box both of said parties had free access at all times, and in this box most of the securities in question were found. Almost immediately after the receipt of the trust property a bank account is opened in the name of John R. or Mary S. Putnam, in which the trust income, his salary as justice, and her small private income, as well as his small private income, are deposited, and also moneys received at different times from a sale of trust securities. This account was checked upon by either party at will for personal, housekeeping, investment, or other purposes. No other bank account was used for the trust estate or by either of the parties except until about May, 1888, a small account was kept by J. R. Putnam as attorney. After the commencement of this action there was

found in this safe-deposit box about $70,200 in securities, mostly certificates of corporate stocks registered in the name of Mary S. Putnam, which, from the identity in amount and name of each security, are easily identified as the same securities which were received by the trustee from the Shoemaker estate. The coupon bonds remained in the same condition in which they were received by the trustee. The registered bonds had been changed to the name of Mary S. Putnam. The certificate, representing a large amount of these stocks, was issued in the name of Mary S. Putnam, November 1, 1887, almost immediately after the trustee received them. We also find in this box new securities standing in her name to the amount of $64,890. Some real estate, concededly the property of the trust, was transferred from the name of the trustee to that of his wife. An account book is found,. evidently containing many accounts with various persons before Judge Putnam became trustee. And here is found an account in the name of John R. Putnam, trustee, in which he entered the receipts of income from the trust, his salary as justice, her small personal income, and his private income. The pages torn from this book deprive us of a part of this account, and also of his inventory of the trust property, which, from the index, we infer was upon some leaves which have been torn out. It is possible this account, if inviolate, might have shown a sale of the trust securities and other valuable information. Just before Judge and Mrs. Putnam were about to take an ocean voyage for his health, and from which he did not return, he prepared a statement of the trust fund (Exhibit 27), and left it in his safe, together with a note given by his wife to him as trustee for $36,987. The amount of this note just balances the account as he made it. The note is found with the account, and it is not quite clear whether her will accompanied them or not. This statement shows that the original securities standing in the name of Mary S. Putnam in the safe-deposit box are a part of the trust estate, and also that the new securities found in said box have been purchased to take the place of trust securities which had been sold. The statement charges him with the securities received from the Shoemaker estate, shows that his commissions and expenses have been paid, and that these securities are the trust securities. This statement is absolutely conclusive in this case if it is evidence against Mrs. Putnam and her estate. Judge Putnam had particular knowledge of all the facts stated. In charging himself with over $200,000 of securities, and acknowledging payment of his expenses and commissions, the statement was a declaration against his interest, and thus became evidence for what it is worth as to all parties and all its contents. Steph. Ev. art. 28. The facts in this case verify and confirm the contents of that statement. Mrs. Putnam has put herself in a position with reference to this trust estate that makes it easy for a court of equity to determine what constitutes the trust fund so far as she and her estate is concerned. She is certainly chargeable with knowledge of the trust; that the securities of the trust practically all stand in her name, and began at least to be changed to her name within two months after the trustee received them, and that those payable to bearer were with the others in a box in which she was joint lessee, and to which she had free

access. The dividend checks upon the securities standing in her name must have been payable to her order, and she must have known that she had not property of her own sufficient to produce such an income. The bank account in her name, and upon which she checked, and in which her private income, though small, was kept, charges her with general knowledge of its condition from time to time. It does not appear that at the time the box in the safe-deposit company was rented she had any securities of her own to put there. Neither does it appear that any securities, concededly the private property either of herself or Judge Putnam, were ever placed in this box. It is not unreasonable to assume that the other securities which were not found were transferred to her at about the time the transfers began to be so made, and if so they could be sold only with her consent and under her signature. Here, where her connection with the trust estate has been such that she was at least called upon to explain her connection with it, and from what source she derived this large amount of property standing in her name, it does not appear that at the time of her death Judge Putnam's estate, or she herself, owned any property of any considerable value aside from Putnam Place, which was concededly her property during all the time. It is not reasonable to suppose that Judge Putnam has managed the trust estate so badly that he lost the greater part of it, but managed his wife's business so successfully that she made about what the trust estate lost. For it is a fair inference from the evidence that he purchased these new securities and had them registered in her name, and it does not appear that she carried on any business, or had any private sources of income aside from what she received from this estate. Neither does it appear from the evidence that any particular part of the trust estate was lost by bad investments or otherwise. The referee finds some losses, but those are on securities which are actually found, but which the referee determines should have been sold. We cannot assume that this trustee has deliberately used for his own private purposes this trust estate, and thus become guilty of a deliberate intentional breach of trust, but it is a better means of accounting for the securities to say, as Judge Putnam said in the statement in evidence, that the trust securities are the securities found in the box in the joint possession of himself and wife, and that this joint possession, and the transfer of the securities to her name, arises from the fact of the wrong construction which both he and his wife put upon the provisions of the will. The acts of both of them are more consistent if viewed in that light.

It is undoubtedly the law that the fact that securities stand in the name of a party is evidence that he is the owner, but when we remember that Judge Putnam and Mrs. Putnam put the known trust securities in her name, and seem to have selected that name as the name in which to put the trust securities, the fact that the securities stand in her name is of but very little importance in a question between her and the trust estate as to their ownership. They were as much in his possession as in hers, and the new securities were as much in his control as the old securities were, which undoubtedly belonged to the trust. Her evidence of title to the one is as good as to

the other, so far as the place in which they were found and the name in which they stand is concerned. The giving of her note to the trust for the deficiency in the trust fund is in the line with their joint control and use of the trust. And that fact, and the way in which this husband and wife managed this trust property, leads to the conclusion that she is fairly chargeable with the knowledge of the contents of the statement Exhibit No. 27, and that that exhibit states the facts as they both understood them.

But it is most seriously contended that the Delaware & Hudson Canal Company stock, of the stated value of $35,960, and now of greater value, found in the safe-deposit box standing in the name of Mrs. Putnam, was purchased with money actually belonging to her. It seems that when Putnam Place burned the $25,000 insurance money concededly hers was deposited in this bank account, and used by him in purchasing in her name New York Central stock, and that it is probable that the proceeds of that stock deposited in this bank account produced the particular fund which bought this Delaware & Hudson Canal Company stock. It also appears that after the purchase, and before the sale of this New York Central stock, Putnam Place was rebuilt at an expense of upwards of $25,000, and the expenses thereof were paid from this same bank account. The referee finds that equity is satisfied by treating this Delaware & Hudson and other new stocks as substitutes to make up the corpus of the estate, and that no charge should therefore be made upon Putnam Place for the moneys spent in rebuilding it. His conclusion is right, but it may be also said that it is unnecessary to trace particular moneys and the use of them, so long as there is a deficiency in the corpus of the estate arising from the way in which it was administered. Equity will not allow to Mrs. Putnam the rebuilt house and the securities bought with the insurance moneys under the circumstances of this case. The trust certainly should be allowed to keep the money from the New York Central stock to replace the money used in rebuilding Putnam Place. The estate of Mrs. Putnam is called upon to follow this bank account further. By her dealings she has so complicated and involved the trust estate that she, rather than the cestui que trust, may properly be charged with proving whose money any particular money found in this bank account was, especially as by placing the known trust securities in her name she cannot rely upon the presumption, which might otherwise apply, that the securities in her name are hers. Whether this money deposited in this account which went to buy the New York Central stock or the Delaware & Hudson Canal stock was actually hers, or the trust's, or Judge Putnam's, depended upon the actual state of the accounts of each with the trust. The moment it went into the general bank account it was such a commingling of trust and individual funds that it lost its identity, and before either individual could claim it as against the trust it should appear that his or her account with the trust is such that it is not needed to make up the deficiency in the trust fund. It may have taken all of this deposit of insurance money, or the money from the New York Central stock, to make up trust funds which had previously been used

by Mrs. Putnam from this same account, or of securities taken by her consent or act from the trust fund.

It is contended that the statement of Judge Putnam, Exhibit No. 27, is inadmissible under section 829 of the Code of Civil Procedure, as Judge Putnam, if living, would be an incompetent witness against her estate. But this statement was made when both were living, and if admissible in evidence its competency should properly be determined as of that time. Moreover, the receipt of such a statement is not "being examined as a witness," within the meaning of that section. Lyon v. Ricker, 141 N. Y. 225, 231, 36 N. E. 189; Matter of Callister, 153 N. Y. 294, 305–307, 47 N. E. 268, 60 Am. St. Rep. 620.

Nor does any party here derive any interest from Judge Putnam. The interest comes from the Shoemaker will. Neither is the evidence of the Shoemaker executors as to what funds they turned over to Judge Putnam inadmissible under section 829. They are not interested in the event of this action. Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836.

The referee has properly charged the trustee with the losses on some bank stock and some railroad income bonds. While those securities came to him with the trust he was a high judicial officer, familiar with the law, and his retaining them until they became worthless is unexplained, aside from the fact that it is probable that his peculiar construction of the will that those were more private than trust funds may have been the reason for such retention. This was certainly an erroneous and unjustifiable view of the situation, for the courts of Ohio had determined, in an action to which he was a party, and before he received the property, that he was to receive it as trustee.

It is contended that the proceedings in the court of ordinary in Georgia, by which the Atlantic Factory stock and the Sibley Manufacturing Company stock were divided in kind as undevised real estate, is an adjudication that such property was real estate, and was not a part of the trust fund, and is binding upon this court, and that the referee has erred in treating those stocks as trust property. The proceedings in Georgia were apparently by consent, and the cestuis que trustent were not parties. The proceedings do not allege that the principal property or investments of the companies were in real estate, which was necessary to make the stock real estate, under the Georgia law, and from the Georgia statute in evidence it appears that such stocks "may be transferred from one person to another for any purpose whatsoever by the same means as are or may be allowed by law for the transfer of personal property." It is therefore evident the title to this stock passed by the Shoemaker will, although it did not have three witnesses, as required by the law of Georgia for the transfer of real estate. We therefore view this proceeding in Georgia as a proceeding taken by consent as a convenient means of getting possession, by the trustee and the other legatees under the Shoemaker will, of this factory stock, and as not a binding decision upon the parties to this action. This was evidently the view of both Judge and Mrs. Putnam, as the stocks, when received, were treated in the same manner as the other trust securities.

A careful consideration of the other questions raised does not affect the validity of the findings of the referee, and the referee's report, except so far as has been changed in some matters of detail by the court, is approved, and an order should be entered confirming said report, and for final judgment thereon. An additional allowance of $2,000 is granted to the plaintiff, an additional allowance of $1,750 is allowed to the defendant John R. Putnam; such allowances and taxable costs to be charged against the defendant Israel Putnam, Corliss Sheldon, as administrator of John R. Putnam, and C. H. Sturges, as executor of Mary S. Putnam. Costs and an additional allowance of $250 allowed the defendant the Lincoln Safe-Deposit Company, same to be payable from the trust fund before division.

Ordered accordingly.