WILLIAM A. MILLER, Executor, etc., Appellant, v. D. W. MONTGOMERY et al., Respondents.

The surety upon the bond of a non-resident executor is interested in the event of the accounting of his principal, within the meaning of section 399 of the Code of Procedure.

Accordingly, *held*, that such a surety was incompetent to testify, as a witness on behalf of the executor, to a personal transaction or communication between him and the deceased.

Also *held*, that the fact that the surety was called by those objecting to the executor's account, and was examined as to other facts to which he was competent to testify, was not a waiver of their right to object to the calling out of the incompetent evidence upon cross-examination.

Also *held*, where such incompetent evidence was given without objection, that the court had the power to strike it out on motion, proof being made, that, at the time the evidence was given, the contestants were ignorant of the fact that the witness was a surety, and it appearing that no harm could come to the executor by the delay in making the objection; that it was a matter within the discretion of the trial court, with the fair exercise of which this court would not interfere.

(Argued September 17, 1879 ; decided September 30, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a decree of the surrogate of the county of New York upon settlement of the accounts of William A. Miller as executor of David Rea, deceased.

The facts appear sufficiently in the opinion.

*F. G. McDonald*, for appellant. Defendants have called the witness Pollock, and sworn him generally, they rendered him competent for plaintiff, although he might have been originally incompetent; and as to every matter embraced in the issue, they are estopped from saying he is interested. (*Fulton Bank* v. *Stafford*, 2 Wend., 485 ; *Varick* v. *Johnson*, id., 201.)

*B. W. Traitel*, for respondents. The witness Pollock was such an interested party as to be incompetent to testify for

the executor, on cross-examination, to transactions and communications with the decedent. (*Wilson* v. *Smith*, 26 Barb., 319, 345, 350, 351; *Card* v. *Card*, 7 Tr. App., 144; 39 N. Y., 317; Code, § 399; *Wilcox* v. *Smith*, 26 Barb., 316.)

EARL, J.    Upon the accounting of the appellant as executor of the will of David Rea, deceased, certain of the legatees appeared and filed objections to the account, claiming that he should have charged himself with the proceeds of certain securities for the payment of money which the testator is alleged to have owned at the time of his decease. The executor claimed that these securities were given to his wife by the testator some months before his death. Hugh S. Pollock had for many years been a partner of the testator, and the fact of the gift depends upon his evidence. He was called by the counsel for the contestants, and upon his examination gave evidence showing that the securities belonged to the testator before his death, and that after his death he found them in an unsealed envelope on a trunk of the testator in the room occupied by him at and before his death, and that he took them and delivered them to the wife of the executor. He was not examined as to any personal transaction or communication between himself and the testator. He was then cross-examined by the executor and testified that about a week before January 1, 1871, at the firm's store, the testator took these securities with two others from a safe used by the firm and placed them in the envelope in which they were found after his death, and sealed it up and wrote thereon as follows :  " For Jane Miller of Paterson, New Jersey.   David Rea ; "  that he then handed the package to witness and told him to hand it to Mrs. Miller when she came down, as a New Year present ; or as he worded it further on in his examination, the testator used this language :  " Pollock, will you be kind enough to take this package and deliver it to Mrs. Miller, my niece."   Pollock further testified that he took the package and placed it in the safe, to which no one but he and

the testator had access, and that he did not see it afterward until in March, the day after the testator's death, when he found it and delivered it, as above stated. In the meantime, the testator had taken it from the safe, and opened the envelope and taken therefrom two of the securities placed therein at the interview with Pollock, and had returned them to the safe ; and he had taken the package to his room, where it was found. Some months before his death, and prior to the interview with Pollock, the testator had also spoken to one other person of his intention to make a gift to Mrs. Miller, for whom he had great affection.

I have now given all the evidence bearing upon the question of the alleged gift.

Some considerable time after the cross-examination, the counsel for the contestants first discovered that Mr. Pollock was one of the two sureties upon the bond of the executor, who was a non-resident, which was given when he took out letters testamentary in this State. He made this discovery before the case before the auditor was closed, and soon thereafter, at a regular hearing of the case, made a motion to have all the evidence of Pollock, given upon his cross-examination on behalf of the executor, which related to the personal transactions and conversations between himself and the testator as to the gift, stricken out, on the ground that the witness was interested and therefore incompetent to testify against the legatees, under section 399 of the Old Code, at the same time offering to show that such interest was unknown to him at the time the evidence was given. He was allowed to show this, and then the evidence was stricken out, and the decree of the auditor was confirmed by the surrogate. The executor now complains of the striking out of this evidence as error. That the witness was incompetent to give the evidence stricken out can not be doubted. The executor, being a non-resident, was required, before letters could be issued to him, to give such a bond as is required of administrators in cases of intestacy (2 R. S., 70), and the bond required of administrators is conditioned that the

administrator "shall faithfully execute the trust reposed in him as such, and also that he shall obey all orders of such surrogate touching the administration of the estate committed to him." (2 R. S., 78.) It has never been doubted that the surety on such a bond is bound by the decree of the surrogate made upon a regular accounting, and that such decree would be evidence against him in a suit upon the bond. (*Wilcox* v. *Smith*, 26 Barb., 316, 346.) A surety, therefore, upon such a bond is so far interested that he would, in such a case, be an incompetent witness under the rule of the common law. That rule is laid down in 1 Greenleaf on Evidence, section 390, as follows : "The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action." By section 398 of the Old Code this common law rule, except as provided in the next section, was abrogated by the provision that no witness should be excluded by reason of his interest in the event of the action or proceeding. And then in section 399 it is, among other things, provided that no person interested in the event of an action or proceeding shall be examined as a witness against a legatee in regard to any personal transaction or communication between such witness and the deceased person under whom the legatee claims. Pollock was therefore interested in the event of the accounting, and was not a competent witness to testify to the matters stricken out, unless the legatees in this case waived their right to object to or complain of the evidence. They waived nothing by calling him as a witness. He was not an incompetent witness. Either party had the right to call him and have him sworn ; and either party had the right to examine him as to all matters to which he was competent to testify ; and by such examination they waived nothing. By examining him as to matters for which he was competent, a party would not be bound to permit him to testify as to matters for which he was incompetent. By producing him as a witness, a party would not certify that

he was competent to testify as to all matters pertinent to the issue on trial. A party may put his lawyer or physician on the stand as a witness to testify to certain facts, and yet the adverse party could not upon cross-examination question the witness as to professional communications or disclosures excluded by the general rules of law.

But a party may waive his objections to the incompetent evidence in several ways. He may do it by himself, inquiring as to the forbidden transactions or conversations. If he does this, the opposite party may inquire as to the same matters. But here Pollock, upon his examination on behalf of the contestants, was asked only as to facts to which he was perfectly competent to testify. He was not asked as to any transaction or conversation with the testator. A party may also waive the objection to the incompetent evidence by omitting to make any objection. If he does not object, the evidence is received, and must be weighed for what it is worth. Usually the objection must be made when the incompetent evidence is offered ; and this is the rule as to all incompetent evidence. But if the objection be not made at the time, and the omission be shown to have been from mistake or inadvertence, the trial court may permit it to be made at any time before the close of the trial, by motion to strike out the incompetent evidence. This is not uncommon practice in the trial of cases. When the objection is not made at the time the evidence is offered or given, it is in the discretion of the trial judge to permit it to be made at a later stage of the trial. That discretion should be carefully exercised, so that no harm will come to the other party ; and it should be exercised when it is just that the incompetent evidence should be excluded, and no harm can come to the opposite party from the delay in making the objection. It is like many other matters of discretion in the conduct of the trial, with the fair exercise of which a court of review will not interfere. Here this evidence should not have been given. It is such as the policy of the law excludes as not sufficiently reliable for the fair administration of justice.

There is no suggestion that there was any harm to the executor by the delay in making the objection, and it is clear that there was no harm. The executor lost nothing by the delay, and was in no way embarrassed thereby; and there is no reason to suppose that the delay was from bad faith. If the evidence had not been stricken out, the executor would, from the mere ignorance and mistake of the counsel opposed, have received the benefit of evidence to which he was not entitled under the law.

The fact that this evidence was called out upon cross-examination does not help the executor. It was not a cross-examination as to any matter inquired of by the other party. It was an examination to establish his defense by new facts against the claim of the legatees. As to such examination he was in the same attitude, so far as pertains to the competency of the witness to testify to such new facts, as if he had himself produced the witness.

With this evidence stricken out, it is not claimed that the alleged gift was established; and therefore, without determining whether or not all the evidence, if left in the case, would have shown a valid gift, the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.