Alfred H. Kleimax, J.
Defendant Louis Pacheco was charged with the sale of dangerous drugs (Penal Law, § 220.35), a felony. Defendant Jose Collazo is charged with possession of dangerous drugs in the sixth degree (Penal Law, § 220.05), a misdemeanor. By stipulation of the Assistant District Attorney and both defense counsel, the cases were consolidated solely for the purpose of the hearings on the felony and misdemeanor complaints held pursuant to CPL 180.60 and 170.75. It was further stipulated that the evidence presented at the joint hearing would constitute the sole evidence to be considered by the court in connection with the motion of defendant Collazo, to suppress the seized evidence, pursuant to subdivision 4 of CPL 710.60.
From the testimony adduced at the joint preliminary hearing, the court finds the facts to be as follows: On January 19, 1973, approximately 7:30 p.m., Patrolman John Lamont was making observations from the roof of an 18-story building across the street from 135 East 110th Street. For approximately one half of an hour he saw one Louis Pacheco standing in front df the building at that address. These observations were made with the aid of 7 by 50-power binoculars. During this time, defendant Collazo approached Pacheco and appeared to engage in conversation. Then Collazo handed Pacheco money in bill form the denominations of which the patrolman could not dis *115 cern. Pacheco appeared to refuse the amount offered; whereupon, Collazo reached into his pocket and produced more money in bill form, which Pacheco then accepted.
Leaving Collazo standing on the sidewalk in the middle of the block, Pacheco entered 135 East 110th Street. He emerged from the building about two minutes later, went back to where Collazo stood, looked in both directions up and down the street, and placed his closed hand over Collazo’s right hand in a manner as if he were handing him something. The officer could not actually see any object passed, but he believed it to be a “ small package ”. Collazo put his right hand into his coat pocket and walked away.
Patrolman Lamont then communicated by walkie-talkie with á brother officer, who was also on narcotics patrol, giving a description of Collazo and stating that he believed Collazo had just purchased narcotics. He testified he had 9 years’ experience in the Narcotics Squad, had made over 600 arrests involving narcotics which had resulted in 50 to 60% convictions, and witnessed hundreds of similar transactions through binoculars. About 15 seconds later, Patrolman Lamont observed a fellow officer apprehend Collazo. Patrolman Freimann, the arresting officer, recovered five tinfoil packages of what he believed to be a narcotic drug from Collazo’s righthand coat pocket. Laboratory analysis showed that the packages recovered contained a white substance, a portion of which was cocaine, a morphine derivative.
It is undisputed that neither Patrolmen Freimann nor Lamont questioned defendant Collazo prior to the searching of his person. At no time prior to the search was defendant advised that he was under arrest. Patrolman Freimann testified that, prior to the time he stopped Collazo on the street, he was informed by Patrolman Lamont that “ a male Puerto Rican wearing a brown leather jacket with a light color fur on the collar had purchased what he believed to be drugs and was proceeding * * * eastbound on 110th Street across Lexington Avenue ”. Based on that description he approached defendant Collazo in his radio motor patrol vehicle. When he pulled alongside Collazo he heard over the walkie-talkie, “ That’s him on your left”; whereupon, Patrolman Freimann alighted from his. vehicle, walked up to Collazo, reached into his pocket and recovered the drugs.
Testimony was further adduced during cross-examination by the attorney for Pacheco, that during the half hour in which Patrolman Lamont had. Pacheco under observation prior to this *116 incident, he witnessed two incidents between Pacheco and other males, substantially identical to that involving Collazo. Defendant Collazo’s attorney did not object to the introduction of this testimony. Fifteen minutes after the arrest of Collazo, defendant Pacheco was taken into custody.
At the close of the hearing the court held that, as to the defendant Pacheco, it had reasonable cause to believe he had committed a felony and accordingly ordered him to be held for the action of the Grand Jury. As to the defendant Collazo, the court denied the motion to dismiss the accusatory instrument, but reserved decision on the motion to suppress, to which this opinion is addressed.
I
There is no absolute rule or equation that provides with any mathematical certainty what constitutes probbble cause in a given case (Brinegar v. United States, 338 U. S. 160 [1949]). Probable cause exists if the facts and circumstances known to the officer warrant a prudent man to believe that an offense has been committed (Henry v. United States, 361 U. S. 98 [1959]). “ Probable cause ” has been further defined as: “ the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers * * * In dealing with probable cause, we deal with probabilities ; these are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” (People v. Tolentmo, 40 A D 2d 596 [1st Dept., 1972].)
In People v. Brown (24 N Y 2d 421 [1969]), the Court of Appeals dealt with a case involving a solitary suspected sale of narcotics. The observed activity on which the arrest was based was as follows: a high crime area, a suspected narcotic addict, a meeting, parting, return and movement of hands.
The court in that case stated that “ Although the observed acts of the defendant and the suspected narcotic addict were not inconsistent with a culpable narcotics transaction, they were also susceptible of many innocent interpretations, even between persons with a narcotics background. The behavior, at most ‘ equivocal and suspicious ’, was not supplemented by any additional behavior raising ‘ the level of inference from suspicion to probable cause ’ (see People v. Corrado, 22 N Y 2d 308, 311, 313).” The court went on to say “ Thus, for example only, there was no recurring pattern of conduct sufficient to negate inferences of innocent activity (cf. People v. *117 Smith, 21 N Y 2d 698; People v. Valentine, 17 N Y 2d 128, 182), no overheard conversation between the suspects that might clarify the acts observed (cf. People v. Cohen, 23 N Y 2d 674), no flight at the approach of the officer (cf. People v. White, 16 N Y 2d 270), and no misstatements when questioned about observed activity (People v. Brady, 16 N Y 2d 186).” (People v. Brown, supra, p. 423.)
The gravamen of the court’s decision in Brown was that although the police officer might be expert, in detecting a pattern of conduct characteristic of a particular criminal activity, and while acknowledging the specialized expertise of trained law enforcement officials, the dictated pattern in that case was only a superficial pattern of such activity; it did not provide probable cause for arrest, since 1 ‘ the same sketchy pattern occurs just as frequently or even more frequently in innocent transactions.” (People v. Brown, supra, p. 424.)
The observed activity in the instant case was similiar in most respects to that of the Brown case. Here, too, we have a high crime area, a meeting, parting, return and movement of hands. However in addition to the aforesaid observations we have the alleged seller looking in both directions up and down the street before the handing over of what appeared to be a small package, and the observations of two substantially identical “ transactions ” observed between defendant Pacheco and other males in the half hour preceding this incident. While this court is willing to concede that, alone, the observation of the sole transaction between the defendants might not provide the requisite probable cause for the arrest of Collazo, the issue presented is: do the aforesaid additional observations raise the level of inference from suspicion to probable cause (People v. Corrado, 22 N Y 2d 308, 311, supra) ? I hold it does. Amongst the examples given in the Brown case of additional behavior which could raise behavior that is equivocal and suspicious to probable cause was a “ recurring pattern of conduct sufficient to negate inferences of innocent activity”. (People v. Brown, supra, p. 423.) While to a layman even the additional observations may be equivocal and consistent with innocent activity, the issue is whether such observations made by an officer of acknowledged specialized expertise raised the level from suspicion to that of probable cause. As was recently said in People v. Meyers (38 A D 2d 484, 486 [1st Dept., 1972]), “ What may have little or no significance to one unfamiliar with the procedures of narcotic trading can be highly relevant to one experienced in the field ”. In determining whether the pattern of behavior is recurring I do not believe *118 the Court of.Appeals intended to set any minimum number of transactions to arrive at a “ recurring pattern ”. Perhaps under the circumstances of a particular case even two such observations may bfe indicative of a recurring pattern of behavior to give an officer probable cause to arrest.
Accordingly, I find that under the circumstances of this case the observation of the behavior of Pacheco on three occasions during a half-hour period satisfied the additional behavior requirement of the Brown case to raise the inference of what might be at most suspicion, to that of probable cause.
II
The officer who stopped and arrested defendant Collazo did not personally make the observations which I have held gave rise to probable cause for the arrest. The Supreme Court of the United States in United States v. Ventresca (380 U. S. 102 [1965]) stated that while an application for a search warrant or a warrant of arrest could not be supported wholly upon hearsay, it found that the observations of fellow officers in a common investigation are plainly a reliable basis for a warrant. The Court of Appeals arrived at the same conclusion in People v. Montague (19 N Y 2d 121 [1967]). I hold the same principle applies to a search without a warrant. In the instant case, the facts. more strongly support the reliability of the partner’s observations than in either of the foregoing cases. The two officers were acting in concert and were in continuous communication with each Other during the incidents. Under the circumstances, Patrolman Freimann’s search of the defendant Collazo was justified as incidental to a lawrful arrest (see United States v. Ragsdale, 470 F. 2d 24 [5th Cir., 1972], rehearing den. 471 F. 2d 650 [Jan. 17, 1973]) which was contemporaneously made (see William E. Eingel, Searches and Seizures [1972 ed.], § 219).
HI
The defendant Collazo argues that, since the evidence of the prior transactions was introduced upon cross-examination by defendant Pacheco’s attorney, it should not be considered as evidence against defendant Collazo. No objection was concededly made to the admission of this testimony by defendant Collazo’s attorney during the hearing, but he now urges that the court should exercise its discretion in striking this evidence, citing Miller v. Montgomery (78 N. Y. 282 [1879]).
Even assuming that an objection properly made by defendant Collazo would have been sustained (evidence of the prior trans *119 actions not having been introduced on the People’s case), the general rule is that the primary responsibility for barring improper evidence rests upon its opponent, and, unless there is a reasonable basis for believing that injustice will result, the absence of an objection is deemed a waiver of the right to object. (People v. Ramistella, 306 N. Y. 379 [1954], revg. 282 App. Div. 723 [1953]; People v. Semione, 235 N. Y. 44 [1923]; Benson v. United States, 146 U. S. 325 [1892]; Parkhurst v. Berdell, 110 N. Y. 386 [1888].)
In Semione, defendants Semione and DePaulo were charged with a homicide. The District Attorney introduced evidence that shortly after the homicide, each defendant charged the other with the commission of the crime. The effect was to make Semione a witness for the People without putting him on the stand and having him cross-examined. DePaulo objected to the evidence; Semione did not.
The court reversed as to DePaulo but affirmed as to Semione, stating that in regard to the failure to'object: “ Whatever his motive, he was silent when he should have spoken. In such circumstances, the presence in the record of testimony which, if challenged, should have been excluded * * * does not vitiate the judgment. The court will not exercise its discretionary power to disregard the absence of objection unless on the whole case there is a reasonable basis for the fear that injustice has been done.” (People v. Semione, supra, p. 46).
At this stage of the proceedings the court is not going to speculate as to whether the failure to object was the inadvertence of an inexperienced lawyer or the strategy of an experienced one. Nor is the court going to speculate as to whether the District Attorney would have rested the examination without such testimony or sought its admittance upon further inquiries on redirect examination. Suffice it to say the defendant has failed to bear his burden of showing that any injustice has resulted from the admittance of this evidence.
IV
Upon a motion to suppress, the ultimate burden of proving that the evidence should not be used against him rests with the defendant (People v. Berrios, 28 N Y 2d 361, 367 [1971]). This burden the defendant has not met.
Accordingly, having found that the People have met their burden of going forward to show the legality of the police conduct in the first instance (People v. Whitehurst, 25 N Y 2d 389 [1969]), the motion to suppress is denied.